ROBERT O. WESTON et al., Copartners under the Firm Name of WESTCHESTER CONSTRUCTION Co., Appellants, v. THE STATE OF NEW YORK, Respondent. (Claim No. 21969.)

(Argued April 14, 1933; decided May 23, 1933.)

*Horace B. Casey* for appellant.

*John J. Bennett, Jr., Attorney-General (James Gibson* of counsel), for respondent.

POUND, Ch. J.   Chapter 752 of the Laws of 1931 reads as follows:

" Section 1. Jurisdiction is hereby conferred upon the court of claims to hear, audit and determine the claim of Robert O. Weston and Charlottte Weston, administratrix, et cetera, of James G. Weston, deceased, doing business as copartners under the name and style of Westchester Construction Company, for damages arising out of an unforeseen soil condition affecting the prosecution of the work contemplated by contract executed by and between the people of the state of New York and said Westchester Construction Company, on May eleventh, nineteen hundred twenty-eight, for the reconstruction of a portion of the Peekskill-Fishkill part one highway, number five thousand one hundred and forty-seven, constituting reconstruction contract number one thousand seven hundred and ten.  As alleged by claimants, such unforeseen condition consisted of the encountering of eighty-five per cent solid rock in excavating through a hillside in the elimination of curves on said highway, which condition was not apparent by examination and was unknown to the state, the county of Westchester and the Westchester Construction Company, at the time of the execution of said contract, and that all parties were mutually mistaken with respect thereto, and that said unforeseen condition resulted in greatly increased cost in the performance of the work under said contract, causing great damage to the said Robert O. Weston and Charlotte Weston, administratrix, et cetera, doing business as before stated.  If the court finds that the facts are substantially as above set forth, and that claimants were damaged by reason thereof, and that in justice and equity the claimants should be reimbursed therefor by the state, the claim shall constitute a legal and valid claim against the state, and the state shall be liable therefor, and the court may make an award

and render judgment for the claimants in such sum as it may determine will properly compensate the claimants for the damage sustained, provided the claim herein authorized be filed with the court of claims within six months after this act takes effect.

" § 2. Nothing herein contained shall be construed as passing upon the merits of the claim herein and no award shall be made or judgment rendered unless sustained by such legal evidence as would create a liability against an individual or corporation in a court of law or equity."

When appellants presented their claim to the Court of Claims it appeared that they had entered into a State highway contract for the construction of about a quarter of a mile of the Peekskill-Fishkill State highway in Westchester county. About six hundred feet of the length of the contract site was cut through a hill approximately one hundred feet in height at its peak above the proposed pavement of the highway. This cut was substantially through solid rock. When claimants bid, the " engineer's preliminary estimate " made up for the purpose of letting the contract and annexed thereto, showed 198,430 cubic yards of " unclassified excavation," with no separation of the amount of rock and earth. Claimants bid $174,407.45, which was some $93,000 less than the engineer's preliminary estimate of the cost of the work. Their bid for unclassified excavation was sixty-eight cents per cubic yard. Owing to the presence of rock, claimants were caused more expense than they had figured on. They asked for $110,119.09 for excess cost. The Legislature passed chapter 752 of the Laws of 1931 for their benefit. Their claim has been disallowed on the ground that claimants had been compensated at contract price for all the excavation made, and that there is no obligation of any kind requiring the State to pay claimants a sum greater than they agreed to accept for the performance of their contract. This decision was the only one possible.

In the " Instructions to Bidders " there appears the following: " The attention of persons intending to make proposals is specifically called to that paragraph of the contract which debars a contractor from pleading misunderstanding or deception because of estimates of quantities, character, location or other conditions surrounding the same. Special attention is called to the notes on the plans which are made a part of the contract and which may alter or revise the Standard Specifications for this particular contract. Attention also is called to the uncertainty in the quantities of many of the items involved in this contract. The quantities of excavation, foundation. course, etc., are specially subject to such uncertainties."

The paragraph in the contract referred to reads as follows:

" 3. The Contractor further agrees that he is fully informed regarding all of the conditions affecting the work to be done and labor and materials to be furnished for the completion of this contract, and that his information was secured by personal investigation and research and not from the estimates of the State Department of Public Works, Division of Highways; and that he will make no claim against the State by reason of estimates, tests or representations of any officer or agent of the State."

Now it is argued that although claimants made no adequate investigation as to subsoil conditions at the site of the work, the State may recognize and has recognized a moral or equitable obligation to compensate them for the increased cost of rock excavation. (*Williamsburgh Sav. Bank* v. *State*, 243 N. Y. 231, 244.)

In order to establish a claim founded upon a moral obligation the court must find that a moral obligation actually exists. There is no moral obligation to give public money to disappointed contractors. (*Farrington* v. *State*, 248 N. Y. 112, 115.) Where is the moral obli-

gation to recompense claimants for their loss on the contract and where is the recognition of such obligation by the State? The claimants must make out their case. They must show not only loss but also a right to compensation therefor.

The preliminary estimate detail sheet made up by the State for its own use showed approximately sixty-five per cent earth and thirty-five per cent rock on the contract site. These were not representations upon which the bidder might rely. If claimants relied thereon they did so at their own risk. "The most it [they] could ask for in regard to this information was good faith." (*Foundation Co.* v. *State,* 233 N. Y. 177, 186.) The contractors assumed the risk. If the excavation had turned out to be all earth no one would suggest that the State would have a legal or equitable claim against the contractors for reimbursement on the ground of mutual mistake. It would be a strange morality which would permit one party to escape the terms of an unprofitable contract while the other party was held thereto. No one would extend a rule of morality to require the holder of a profitable contract to surrender a portion of his legitimate profits.

One who makes a contract cannot be certain that he will be able to do the work for the amount of his bid. The risk of failure falls on his shoulders. Equity does not relieve from bargains, merely because they are unprofitable.

The contractor had the same opportunity as the State to make investigations. When no claim of deception, inequality or inequity is presented he is bound by the terms of his contract. Justice and equity do not require the State to reimburse a contractor for increased expense unless the mistake was due to the act of the State, not even where the increased cost was due to the unexpected event of the World War. (*Swift* v. *State,* 89 N. Y. 52; *Matter of Semper* v. *Duffey,* 227 N. Y. 151; *Gordon* v. *State,* 233 N. Y. 1, 8.)

*Sundstrom* v. *State* (213 N. Y. 68) is not in conflict with these cases. The claimants in that case did not assert that in making the contract they were misled by any estimates prepared by the State, or that they relied upon anything but their own investigations, or that they were misled by error or mistake as to the special terms of the contract. Their work was made greater because of the negligence of the State after the making of the contract. The court said (p. 72), "there is certainly no liability to contractors in the absence of negligence," no moral or equitable duty to reimburse them because they have voluntarily assumed the risk of a bad bargain. (*Gordon* v. *State, supra.*)

This case resolves itself into an attempt to grant extra compensation to a contractor contrary to the provisions of the Constitution of the State of New York, article III, section 28, which reads as follows:

" Extra compensation prohibited.— § 28. The Legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant any extra compensation to any public officer, servant, agent or contractor.",

Extra compensation is compensation over and above that fixed by contract for the work agreed to be done. It would, either in a legal or equitable sense, be in the nature of a gratuity. (*Matter of Mahon* v. *Board of Education*, 171 N. Y. 263, 266; *Gordon* v. *State, supra; Board of Supervisors, Cayuga Co.* v. *State*, 153 N. Y. 279, 288. If the claim were for extra work which the contractor was not obligated by the contract to do, or which the conduct of the State alone rendered necessary, the case would be different.

We pass over as not necessary to the decision the pertinency of the saving clause contained in section 2 of the act quoted *supra*, which explicitly says that " no award shall be made or judgment rendered unless sustained by such legal evidence as would create a liability against an individual or corporation in a court of law or

equity." This language is in conflict with section 1 of the act, which recognizes a moral obligation rather than an obligation which could be enforced against an individual in a court of justice and, if read literally, would defeat the purpose of the act and take away the remedy it seemed to grant.

The judgment should be affirmed, with costs.

CRANE, LEHMAN, KELLOGG and CROUCH, JJ., concur; O'BRIEN and HUBBS, JJ., not sitting.

Judgment affirmed.