LEITCH MANUFACTURING COMPANY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 24812.)

Court of Claims, January 30, 1939.

*Whitman & Schoengold* [*Max Schoengold* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*John M. Dooley, Assistant Attorney-General,* of counsel], for the defendant.

RYAN, J. Claimant contracted with the State to install sub and finished floors at the Biggs Memorial Hospital at Ithaca. This suit arises out of that portion of the contract dealing with the sub floors, which were required to be of light duty mastic consisting of prescribed proportions of Portland cement, asphalt emulsion and sand. The dispute involves the contract provision which read: " The thickness of the light duty mastic will vary from a feather edge to $1\frac{1}{2}$ inches thick with an average depth of about $\frac{3}{4}$ inch." (Contract, art. 2428, Exhibit 8.)

Claimant alleges that this was a misrepresentation on which it relied, and sues to recover for the extra cost incurred by it in laying excess materials. It does not appear that, prior to making up proposals and advertising for bids thereon, the State or its representatives ever took any measurements to determine the amount of flooring required. The contrary must be found as a fact, because the engineer in charge of the contract, who held that responsibility for fifteen months or longer prior to the letting, testified that he could not recall any measurements being taken and did not know how the State arrived at the figure specified for depth.

Although witnesses disagree as to computation, there is no question but that the claimant installed excess material for which it has not been paid.

The State denies liability because of article 2, section 6, of the general conditions of the contract, reading as follows: " The proposal based upon these specifications shall be regarded as having been made with full knowledge of conditions and requirements. The contractor shall be presumed to have visited the premises prior to the time of submitting proposal for work herein described, and to have observed and given consideration to the conditions under which this contract is to be executed, but no conditions found at the site will relieve the contractor from estimating the full quantities of work required by the plans or specifications. If the drawings or specifications cover work which will not be required on account of local conditions proper credit for the omission of said work shall be allowed by an order on contract."

Claimant's representative, McDonald, did visit the site and made measurements which he found to be just about the three-quarters of an inch called for in the specification. He found the

concrete floor slab rough and uneven but did not observe whether it sloped in any direction. Dyke, the engineer in charge, accompanied McDonald during part, at least, of his investigations.

After the work was in progress and after claimant had complained to the Department of Public Works that it had installed floors of an average thickness of one and three-eighths inches, the State's engineer, aided by claimant's superintendent, made measurements of mastic floor thicknesses and found them to average for all buildings better than one inch. (The engineer's figure was 0.0847 feet.)

We think the specification in the contract was one upon which the claimant had a right to rely. While the word "average" was used, the figure was not an approximation. The terms were "the thickness will vary from a feather edge to $1\frac{1}{2}$ inches thick with an average depth of about $\frac{3}{4}$ inch." Dyke, the engineer in charge, testified that the slope in the floor was not very noticeable "over a wide area;" that "a person cannot detect levels, generally speaking." Yet the defendant urges that claimant might have determined, with transit and level, the exact measurements before estimating its bid. The State's engineers did not attempt this nor make any other effort at measurement. We think the claimant was not required to do more than it did, but was entitled to rely on the State's representation. We do not find *Weston* v. *State* (262 N. Y. 46) nor *Niewenhous Co.* v. *State* (272 id. 484) to be authorities barring recovery herein. (See *Cauldwell-Wingate* v. *State*, 276 N. Y. 365.)

As we find that the State misrepresented the situation as to depth of material required, article 24, section 101A, of the general conditions does not control. As this section appears to be a new provision in State contracts not heretofore passed upon by this court, we quote it. It reads as follows: "The Contractor shall present with the application for final payment an itemized statement showing: (a) the amount, if any, claimed to be due him for work, labor and materials which he designates as extras and which have not been provided for by Orders on Contract under this contract: (b) each and every claim, if any, asserted by him based upon an alleged breach of contract by the State. The Contractor shall thereafter be precluded from asserting any claim or claims against the State of New York not so included."

In any event, although it may not have presented with its application for final payment an itemized statement of the demands, this contractor had in effect complied with the above-quoted condition by frequent written protests against what it was being required to do. The Department of Public Works was fully aware of the nature of this claim long before application for final payment was presented.

Upon the trial a question arose as to whether or not in accepting payment of the final estimate this claimant had reserved the right to file its claim against the State. The issue hinged on whether or not the original of claimant's Exhibit 21, a letter dated November 30, 1936, was received with the final requisition which bore the same date. McDonald testified that he dictated the letter and sent it with the requisition to Dyke, the State's engineer at Ithaca. Although Dyke testified that he never saw the letter until the trial, he nevertheless wrote to claimant a letter dated December 1, 1936, which began: "Your letter and payment application have been received but I find that several corrections are necessary before same can be forwarded." With this letter Dyke returned the requisition to claimant for correction and when it came back into his hands he acknowledged receipt for it by letter dated December 4, 1936, which read: "Your final payment application has been received and checked at this office."

The judge presiding at the trial reached the conclusion that claimant's letter containing the reservation of the right to file its claim had been sent by claimant and received by Dyke and so announced his finding on that subject. As this ruling has now been attacked by the Attorney-General in a brief filed several months after the trial, which cites *Elmore* v. *Busseno* (175 App. Div. 233) and *Cashman, Inc.* v. *Spellman* (233 id. 45) on the rule as to presumption of receipt from testimony as to mailing, let this be said: This court does not rely upon any presumption but finds as a fact that the letter was received. Dyke's letter acknowledges receipt of "Your letter and payment application." No letter other than Exhibit 21 is produced to which Dyke could possibly have referred and when after its correction by claimant the final payment application came back into his hands he acknowledged receipt merely of "Your final payment application."

The best of memories may sometimes be in error. The preponderance of evidence is that the letter of reservation was received by the State's engineer. That he did not forward it to Albany does not bar the claimant from recovery herein.

As to the payment of damage we accept the figures of the State's engineer arrived at by depth measurement rather than by weight content measured by a typical unit. The claimant is awarded $1,837.44, with interest thereon from the date of final estimate, November 30, 1936.

Enter findings accordingly.

BARRETT, P. J., concurs; GREENBERG, J., dissents.

GREENBERG, J. (dissenting). I dissent from the conclusion reached by the court, and am of the opinion that the claimant is

not entitled to an award against the State for damages sustained by reason of the alleged misrepresentation in the contract as to the depth of the sub-base to be laid on the concrete flooring.

The concrete floors were completed prior to the making of the contract in question and the exact thickness of the sub-base could have been ascertained by use of a transit. The specifications, upon which claimant made his bid, contained the provision " the thickness of the light duty mastic will vary from a feather edge to $1\frac{1}{2}''$ thick, with an *average* depth of *about* $\frac{3}{4}$ of an inch." (Exhibit 8, art. 2428.) The contract further provides that the contractor shall be regarded as having been fully acquainted with the conditions and requirements, and as having visited the premises prior to the time of submitting proposal for the work and to have observed and given consideration to the conditions under which the contract is to be executed, and that no conditions found at the site will relieve the contractor from estimating the full quantities of work required by the plans and specifications. (Art. 2, subd. 6.)

In my opinion the statement in the plans and specifications with respect to the *average* depth was not such a misrepresentation upon which the claimant can predicate the cause of action against the State. The language itself, " that an *average* depth of *about* $\frac{3}{4}$ of an inch," gives to the bidder sufficient warning that at best it was but an approximation, and certainly is not a positive statement, and claimant, therefore, cannot be relieved of the provisions contained in subdivision 6 of article 2 of the contract, requiring it to visit the site and give consideration to the conditions found thereat. The floors were completed and the exact thickness of the sub-base could have been ascertained, and claimant should not have relied upon an approximation of the average depth without determining with exactitude the sub-base thickness prior to the submitting of its bid on the proposal.

The decision in the case of *Hollerbach* v. *United States* (233 U. S. 165), cited in support of its claim herein, is not in point. The statement in the specifications in the case at bar, as heretofore stated, is but an approximation, and *not positive*, whereas the statements contained in the specifications in the *Hollerbach* case were positive. Attention is called to the language of the decision in the *Hollerbach* case, appearing on page 172, " this *positive* statement of the specifications must be taken as true and binding upon the Government. * * * In its *positive assertion* of the nature of this much of the work be made a representation upon which the claimant had a right to rely without an investigation to prove its falsity." The decisions of the Court of Appeals in *Foundation Co.* v. *State* (233 N. Y. 177, 186); *Weston* v. *State* (262 id. 46) and *Niewenhous Co.* v. *State* (272 id. 484) govern. No bad faith on

the part of the State has been proven by the claimant herein, and the claimant, having been fully acquainted with the instructions to bidders, could, and should, in the exercise of ordinary caution and prudence, have made a proper and adequate inspection of the premises and not rely upon the alleged representation of " about ¾ of an inch." The exact measurements and elevation of all of the floors upon which the work was to be done could very easily have been determined and checked prior to the bidding by the use of a transit. If claimant had made the proper investigation it could have ascertained the depth of the sub-base to be laid, but having made the bid upon the proposal without making such measurements, claimant assumed the risk, and cannot claim that the State misrepresented the facts upon which it made its bid and secured the contract herein and that it relied upon such representation to its damage and expense. The claim herein should be dismissed.