LEITCH MANUFACTURING COMPANY, Respondent, *v.* THE STATE OF NEW YORK, Appellant.*

(Claim No. 24812.)

Third Department, July 11, 1939.

*John J. Bennett, Jr., Attorney-General [Leon M. Layden, Assistant Attorney-General,* of counsel], for the appellant.

*Whitman & Schoengold [Max Schoengold* of counsel], for the respondent.

HEFFERNAN, J.    The State of New York is appealing from a judgment of the Court of Claims in claimant's favor for the sum of $2,079.37.    The basis of the claim is an alleged misrepresentation by the State in the specifications which it prepared regarding the depth of the fill required to be made.

On the 30th of April, 1936, claimant entered into a contract with the State which required furnishing and installing by respondent of cold mastic subfloors at the Biggs Memorial Hospital at Ithaca, N. Y.    The floors were required to be installed in all spaces where asphalt tile was listed in the floor column of the schedules of interior finishes on the drawings.    Claimant contends that the State misrepresented the depth of the fill required in the following clause in the specification: " Existing concrete floor slabs shall be thoroughly cleaned, moistened and then given a coat of asphalt primer, after which light duty mastic shall be applied to bring the sub-floors up to the required elevations to receive the floor covering materials.    The thickness of the light duty mastic will vary from a feather edge to one and one-half inches thick, with an average depth of about three-quarters of an inch."

Although there is some discrepancy in the testimony regarding the computations as to extra material there is no doubt about the fact that claimant did install excess material for which it has not been paid.    After the work commenced claimant protested to the Department of Public Works that it had installed floors of an average thickness of one and three-eighths inches.    The State's engineer and claimant's superintendent then made measurements of mastic floor thicknesses and found them to average for all buildings better than one inch.

The State insists that it is immune from liability because of section 6 of article 2 of the general conditions of the contract which reads: " The proposal based upon these specifications shall be regarded as having been made with full knowledge of conditions and requirements.    The contractor shall be presumed to have visited the premises prior to the time of submitting proposal for work herein described, and to have observed and given consideration to the conditions under which this contract is to be executed,

but no conditions found at the site will relieve the contractor from estimating the full quantities of work required by the plans or specifications. If the drawings or specifications cover work which will not be required on account of local conditions proper credit for the omission of said work shall be allowed by an order on contract."

It is important to remember that the concrete floors were completed prior to the making of the contract in question and that the exact thickness of the subbase could have been ascertained by the use of a transit. Prior to the signing of the contract a representative of claimant went to Ithaca and looked over the buildings. At this time the concrete floors were in. The president of claimant knew the condition of the floors prior to the signing of the contract and knew of course that the floors were uneven. When claimant submitted its bid for this work it knew that the concrete floors upon which the subbase were to be laid were not level. It is not disputed that if claimant prior to signing the contract made use of a transit and secured the elevation of the floors it could very readily have determined the amount of material required. Apparently from the proof, which is not disputed, it would have taken only a few moments to have made this determination. In addition to that the language of the specification itself that " *the thickness of the light duty mastic will vary from a feather edge to one and one-half inches thick, with an average depth of about three-quarters of an inch,*" is sufficient notice to any prospective bidder that this particular measurement was merely an approximation. The language is clear and unequivocal. It seems to us that anyone with ordinary intelligence would understand that no positive statement was made as to the exact amount of material required. It cannot be said that there was any bad faith on the part of the State; it was guilty of no deception. Claimant was furnished all the information necessary in the instructions to bidders and ordinary prudence and caution on its part would have given it exact information. Having declined to avail itself of the opportunity to learn precisely what the conditions were it should not now be permitted to charge the State with liability on the ground of fraud and misrepresentation. Here there was no positive statement on the part of the State that the language of the specifications must be taken as true. There was no positive assertion on the part of the State upon which claimant had a right to rely as to the exact quantity of material which it was necessary to furnish. It is also to be noted that there is no place where the subbase was over one and one-half inches in thickness and that the greatest thickness shown in the entire record is one and three-eighths inches.

It seems to us that the cases of *Weston* v. *State of New York* (262 N. Y. 46) and *Niewenhous Company, Inc.,* v. *State of New York* (272 id. 484) are decisive of the question involved here.

The judgment of the Court of Claims should be reversed and the claim dismissed, with costs.

CRAPSER and BLISS, JJ., concur; HILL, P. J., dissents, with a memorandum.

HILL, P. J. (dissenting). I dissent and vote to affirm the judgment of the Court of Claims.

The contractor had a right to rely upon the State's representation contained in the specification, that the average fill was about three-quarters of an inch. It was, in fact over one inch, thus one-third more material was used than expected. It was not a simple matter to ascertain the amount of fill required in the two hundred rooms involved in this contract, and it appears that no measurements had been made by a state official at the time the specifications were prepared, and that there was a slight slope in some of the floors which was not readily observable to the eye, unaided by exact measurements. The representation by the State without having taken any steps to ascertain the truth, should entitle the claimant to recover.

Judgment reversed, on the law and facts, and claim dismissed.

The court hereby reverses Findings of Fact Nos. 5, 6, 7, 8, 9, 10, 11, 16, 17 and 18, contained in the decision of the Court of Claims.

The court hereby disapproves of Conclusion of Law numbered 1, contained in such decision.

The court also reverses Findings of Fact Nos. 5, 6, 7, 8, 9, 10 and 11, contained in claimant's requests to find and found by the court.

The court also disapproves of Conclusions of Law Nos. 2, 3, 5 and 6, contained in claimant's requests to find and found by the court.

The court hereby finds Findings of Fact numbered 8, 10, 11 and 16, contained in the State's requests to find and refused by the Court of Claims.

The court hereby adopts and makes Conclusions of Law numbered 1, 2 and 3, contained in State's requests to find.