Manstin Engineering Corporation, Appellant, *v.* The State of New York, Respondent.

(Claim No. 24353-A.)

Hill, P. J., Bliss, Schenck and Foster, JJ., concur; Heffernan, J., dissenting in part, with an opinion.

Heffernan, J. (dissenting in part). On October 5, 1934, claimant, a domestic corporation, entered into a contract with the State of New York for the reconstruction of a portion of the Oxford-Chester State highway and bridge thereon located in the town of Chester, Orange county, N. Y. The work was completed by claimant and duly accepted and approved by the State on August 30, 1935. After the completion of the contract claimant presented to the State a claim for damages in connection with the prosecution of its contract aggregating $36,854.04, consisting of the following four items:

" Item One: Loss and damage and extra cost to claimant in connection with change in method of blasting required by State and extra and unnecessary blasting required by State . . . . . . . . . . . .    $2,557 60

" Item Two: Failure to estimate, allow and pay for purchase of 3,443 cubic yards of fill from Greycourt borrow and partial cost of overhaul . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    692 94

" Item Three: Failure to estimate, allow and pay for extra supply of 580 cubic yards of R. O. B. Gravel . . . . . . . . . . . . . . . . . . . . . . . .    988 90

" Item Four: Increased cost of excavation of rock due to State's misrepresentation, not shown on plan or in contract, nor contemplated therein . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    32,614 60."

Claimant contends that because of certain requirements of the State it was required to do certain work under the contract in a more costly and expensive manner than therein required and further, that because of alleged misrepresentations contained in the plans, it was caused additional expense. After the trial in the Court of Claims claimant was allowed the sum of $1,824.72 under item one. Item three was allowed in full and no allowance was made to the claimant under items two and four. This appeal, therefore, concerns the limited recovery under item one and the dismissal of items two and four. We shall discuss these items in the order specified.

Under item one the claimant contends that the State unreasonably and unnecessarily interfered with its operations in the blasting of the embankment at the site of the main borrow pit by requiring it to drill and blast to depths not contemplated or required by the contract or drawings and by requiring it to leave a buffer wall along the edge of the highway at the time of blasting and requiring it to excavate the buffer wall separately. The court below found and allowed the claimant a recovery for the portion of its claim for excess drilling but declined to compensate claimant for the expense of excavating the buffer wall separately. The embankment to be blasted was located at the northerly end of claimant's project and was adjacent to Route 17, the main highway leading from New York city to Sullivan county. The claimant originally planned to blast the entire embankment with a single blast and prepared its plans accordingly. This method contemplated the drilling of holes in the buffer wall sector to a shallow depth and shoot the buffer wall at the same time as the main blast. The State insisted that the buffer wall be left along the entire length of the highway as a method of protecting the highway. In the plan sheet we find the following provisions: " The area provided shall be excavated as directed by the engineer and slope shall be trimmed to conform to the requirements of this department after all necessary borrow has been obtained."

The contract contains the following stipulation: " The contractor agrees to conduct his work so as to interfere with traffic as little as possible, and so that the road shall not be closed except in the manner provided by section 77 of the Highway Law, as last amended by chapter 88, Laws of 1927, being chapter 30 of the Laws of 1909 and the Acts amendatory thereto."

In view of these provisions of the contract the sole inquiry here is whether or not the direction of the State as to excavation and the retention of the buffer wall was unreasonable and arbitrary particularly with relation to the maintenance of traffic and the closing of the highway. The contention of the State is that if the entire embankment had been dynamited at one time a large amount of rock would have been thrown upon and across the highway and removal thereof would have required a considerable time. For the purpose of guarding against that contingency the State required that the buffer wall be left and dynamited at some subsequent time.

A blasting expert called by claimant practically admitted on his cross-examination that the buffer wall could not have been removed at the time the embankment was dynamited without damage to the highway. He conceded that this method would have delayed traffic for a period of four or five hours after the shot. It is significant that the method used resulted in no damage to the highway and with only an hour's delay in traffic. It is true that other witnesses on behalf of claimant testified that if the single shot method had been used it would have been much more economical for the contractor. The fact that the method suggested by claimant would have been more economical for it is not of prime importance. It was the duty of the State not only to guard its interests but the interests of the public. It seems to us that, in view of the fact that the plan proposed by claimant might result in damage to the highway and concededly in an unreasonable delay in traffic, the action of the State's representatives in directing that the buffer wall be retained was neither unreasonable nor arbitrary. We think the finding of the court below on this question is sustained by the evidence and that the disputed item was properly disallowed.

As to item two it appears that the drawings furnished by the State contained a warranty that all materials to be used as fill were to be taken from the main borrow pit located at the northerly end of claimant's site of operations. When claimant commenced the performance of its contract it found that the materials in this pit consisted mostly of rock and did not contain sufficient earth content to do the work called for by the contract. Thereupon claimant, with the approval of the State engineer, purchased 2,836 cubic yards of fill at a cost of $521.81 from a pit located approximately a mile distant from the site of operations under the contract. The State paid for the cost of hauling this material but refused to reimburse claimant for the purchase price of the material itself.

The court below found that the contract, plans and specifications required claimant to take all the fill from the main borrow pit; that the main borrow was not adequate and failed to furnish sufficient earth fill and materials; and that the reasonable cost of the additional borrow exclusive of haulage was $521.81. The court, however, declined to make any allowance to claimant under this item. In view of the undisputed evidence in the case and the findings of the trial court it is difficult to understand why recovery for this item was denied. Claimant's proof is undisputed and its evidence should not have been disregarded. Clearly it is entitled to be allowed the sum of $521.81 under item two.

Under item four the claimant contends that it was put to additional expense and cost by reason of alleged misrepresentations and errors contained in the plans and specifications furnished by the State. It alleges that these plans showed that the excavation would be eight per cent rock and ninety-two per cent earth and that actually the excavation was composed of seventy-five per cent rock and twenty-five per cent earth. It further alleges additional expense because the plans and proposal allegedly contemplated a removal of approximately 54,050 cubic yards of excavation while in fact but 27,935 cubic yards were actually excavated. In its defense to this item the State relies upon a clause contained in the instructions to bidders and a clause in the contract itself to the effect that there is uncertainty in the quantities of excavation to be removed and that the contractor has fully informed himself of all the conditions affecting the work to be done and the labor and materials to be furnished for the completion of the contract and that he will make no claim by reason of estimates, tests or representations of any officer or agent of the State.

It is not disputed that the drawings contained data in the form of notes on the plans indicating that the composition of the borrow pit was eight per cent rock and ninety-two per cent earth. The engineers who testified on the trial so stated. The court below found that the embankment was composed of seventy-five per cent rock and twenty-five per cent earth. The actual removal of rock was 20,890 cubic yards and the earth removal consisted of 6,948 cubic yards. When claimant submitted its bid it relied upon the accuracy of the plans showing an eight per cent rock content. The proof demonstrated that the rock contained in this embankment was of such a character that it could not be removed without the aid of blasting and the use of a power shovel. It is also undisputed that there was but a ten-day interim between the submission of the proposed work to bidders and the date when bids were required to be submitted. Concededly claimant removed 27,935 cubic yards for which it was paid at the rate of forty

cents per cubic yard.  The actual cost to claimant for doing this work was one dollar and ten cents per cubic yard, amounting in all to $19,554.50.  The principles of common honesty and simple justice demand that claimant should be reimbursed for its loss.  It is undisputed that claimant accepted and relied on the State's plans which indicated an eight per cent rock content whereas the actual rock content was seventy-five per cent.  The claimant had the right to rely on the information contained in the contract.  The provisions in the contract requiring it to investigate the site do not bar it from recovery.  (*Christie* v. *United States*, 237 U. S. 234; *Cauldwell-Wingate Company* v. *State of New York*, 276 N. Y. 365; *McGovern* v. *City of New York*, 202 App. Div. 317; modfd. on other grounds, 235 N. Y. 275.)

The State is relying largely on *Weston* v. *State of New York* (262 N. Y. 46) and *Leitch Manufacturing Co.* v. *State of New York* (257 App. Div. 541; affd., 282 N. Y. 758).  We think these cases do not apply.  In the *Weston* case the claim was based on a breach of contract and on an alleged mutual mistake of fact.  It was not based as this claim is on misrepresentation and concealment. It clearly appears that the *Weston* case was based on unforeseen conditions and on a mutual mistake of fact.  In that case too there was no misrepresentation on the part of the State.  All of the preliminary drawings and surveys were furnished to  the contractor and he had an opportunity to inspect them and to discover any discrepancies.  In the case before us the preliminary drawings and surveys were not available to claimant until the day of trial.

In the *Leitch* case we held that there was no misrepresentation or bad faith on the part of the State and that the contractor by making use of a transit could have determined in a few moments the exact amount of material required.

It seems to us that claimant is not entitled to damages because of the discrepancy in the material excavated and that estimated.  The statement contained in the instructions to bidders put claimant upon notice as to the uncertainty in the quantities of the items involved in the contract.  The State made no misrepresentation in this respect; its estimate was a mere approximation and that part of item four was properly disallowed.

The judgment of the Court of Claims in favor of claimant amounting to $2,823.62 should be modified by adding thereto the sum of $521.81 under item two and the further sum of $19,554.50 under item four, amounting in all to $22,899.93, with interest thereon from August 30, 1935, and as so modified affirmed, with costs to appellant.