759 A.2d 1223 (2000)
334 N.J. Super. 429
SMC CORPORATION, INC., Plaintiff-Appellant,
v.
NEW JERSEY WATER SUPPLY AUTHORITY, Defendant/Third-Party Plaintiff-Respondent,
v.
Bergmann Associates i/p/a Donald J. Bergmann & Associates, Inc., Third-Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 2000.
Decided September 28, 2000.
Bruce R. Demeter, Trenton, argued the cause for appellant (Simon & Demeter, attorneys; Mr. Demeter, on the brief).
*1224 Emily H. Armstrong, Deputy Attorney General, argued the cause for respondent New Jersey Water Supply Authority (John J. Farmer, Jr., Attorney General, attorney; Susan R. Roop and Mary C. Jacobson, Assistant Attorneys General, of counsel; Ms. Armstrong, on the brief).
Before Judges D'ANNUNZIO, KEEFE, and EICHEN.
The opinion of the court was delivered by D'ANNUNZIO, P.J.A.D.
This is a public contract case. At issue is the allocation of the risk of unknown subsurface conditions. Appellant, SMC Corporation (SMC), sued a public entity, New Jersey Water Supply Authority (Authority), for additional expenses incurred in SMC's performance of its contract with the Authority. SMC appeals from a summary judgment in favor of the Authority.
SMC was the low bidder, at $311,000, for the contract to reconstruct the Moores Creek culvert in Hopewell Township, Mercer County. The work had to be done in the stream bed, and water had to be removed from the work area during construction. SMC was responsible for dewatering the site, and the specifications called for it to use cofferdams.[1] As SMC was about to begin work, it discovered a "scour hole" approximately 9 feet deep where Moores Creek empties into the Delaware River. The scour hole was much deeper than the bed of the river shown on the Authority's plans.
SMC advised the Authority's representatives that the position of the scour hole prevented construction of the cofferdams where indicated on the plans and that additional work and expense would be required to solve the problem. Although the record suggests that the Authority's representatives accepted the fact that the existence of the scour hole would require additional work, they rejected SMC's estimate of an additional $190,000. Thereafter, SMC performed the work and completed the job in a timely manner. SMC commenced this action to recover additional costs.
The Supreme Court of New Jersey, in an opinion by Justice O'Hern, addressed the issue of risk allocation in P.T. & L. Constr. Co., Inc. v. Department of Transp., 108 N.J. 539, 531 A.2d 1330 (1987). The Court noted that the federal government uses a changed conditions clause in its contracts. Id. at 547, 531 A.2d 1330. It permits a contractor to make a claim for additional work caused by subsurface or latent physical conditions at the site "differing materially from those indicated" in the contract or for "unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in this contract." Foster Constr. C.A. & Williams Bros. Co. v. United States, 193 Ct.Cl. 587, 435 F.2d 873, 876 (1970); see generally N.O. Harlow, Annotation, Construction and Effect of "Changed Conditions" Clause in Public Works or Construction Contract with State or Its Subdivision, 56 A.L.R.4th 1042 (1987). The federal changed conditions clause allocates the risk of unknown conditions to the government, thereby, theoretically, generating lower-priced initial bids from contractors. Foster Constr. C.A. & Williams Bros. Co., supra, 435 F.2d at 887; see Hazel Glenn Beh, Allocating the Risk of Unforeseen, Subsurface and Latent Conditions in Construction Contracts: Is There Room for the Common Law?, 46 University of Kansas L.Rev. 115, 131-34 (1997).
The contract used by the New Jersey Department of Transportation in P.T. & L. allocated the risk of the unknown to the *1225 contractor. P.T. & L., supra, 108 N.J. at 551-52, 531 A.2d 1330.[2] Nevertheless, the Court held that if the contract specifications made "positive averments which purported to actually describe the land" but which were not correct, then the contractor had a claim for additional expenses generated by the work. Id. at 554, 531 A.2d 1330. If the contract, however, "`made no mention of whether such conditions would be encountered,'" the contractor had no claim under the contract utilized in P.T. & L. Ibid. (quoting Golomore Assocs. v. New Jersey Highway Auth., 173 N.J.Super. 55, 59, 413 A.2d 361 (App.Div. 1980)); see Ell-Dorer Contracting Co. v. State, 197 N.J.Super. 175, 484 A.2d 356 (App.Div.1984); Sasso Contracting Co. v. State, 173 N.J.Super. 486, 414 A.2d 603 (App.Div.), certif. denied, 85 N.J. 101, 425 A.2d 265 (1980).
The contract in the present case does not contain the strong clause imposing the risk of subsurface conditions on the contractor as did the contract in P.T. & L., nor does it contain an explicit changed conditions clause as in federal contracts. The SMC contract does contain the following, which we refer to hereafter as paragraph 9:
9. Site Investigation and Representation:
The contractor acknowledges that he has satisfied himself as to the nature and location of the work, the general and local conditions particularly those bearing upon transportation, disposal, handling and storage of materials, availability of labor, water, electric power, roads and uncertainties of weather, floods or similar physical conditions at the site, the topography and conditions of the ground, the character of equipment and facilities needed preliminary to and during the execution of the work, and all other matters upon which information is reasonably obtainable and which can in any way affect the work or the cost thereof under this Contract. The Contractor further acknowledges that he has satisfied himself as to the character, quality and quantity of information regarding the above that is reasonably ascertainable from an inspection of the site, including all exploratory work done by the Authority or the Engineer, as well as information contained in the Drawings and Specifications forming a part of this Contract. The Contractor further acknowledges that he has satisfied himself as to the availability of timber, stone, fill material, etc. both as to quality and quantity required to execute the work. Any failure by the *1226 Contractor to acquaint himself with all the available information will not relieve him from the responsibility for estimating properly the difficulty or cost to successfully perform the work.
The Contractor's attention is drawn to the fact that As-Built Drawings of existing work do not exist and some dimensions shown on the Contract Drawings have been estimated. All dimensions shall be field checked by the Contractor.
[Emphasis added.]
In granting summary judgment, the trial court ruled that the Authority made no "affirmative misrepresentation" regarding existing conditions. We agree and affirm that ruling. Although the drawings did not show the scour hole in the stream bed, a note on the drawings advised the contractor that "information shown on the existing conditions of the culvert and adjacent areas are based on field inspections performed during March and April 1992, and other information available at the time. Actual field conditions may vary from that shown on the contract drawings."
The trial court also determined that SMC "assumed the risk contained in the contract." We disagree. Paragraph 9 does not impose the risk of subsurface conditions on the contractor, as did Article 1.2.12 of the P.T. & L. contract. See footnote 2, supra. In Sasso, supra, we characterized Article 1.2.12 as "straightforward, unambiguous and categorical ... in placing responsibility for subsurface investigation on the contractor." 173 N.J.Super. at 489, 414 A.2d 603; accord Ell-Dorer, supra, 197 N.J.Super. at 183, 484 A.2d 356. Nor is paragraph 9 an explicit changed conditions clause. Cf. Sornsin Constr. Co. v. State of Montana, 180 Mont. 248, 590 P.2d 125 (1978) (holding that contractor entitled to additional compensation under changed conditions clause where depth of water greater than anticipated in plans interfered with placement and functioning of cofferdam). Paragraph 9, drafted by the Authority, presents an ambiguous middle ground. A public authority is subject to the principle "that where ambiguities exist they are to be taken most strongly against the draftsman." Terminal Constr. Corp. v. Bergen Cty. Hackensack River Sanitary Sewer Dist. Auth., 18 N.J. 294, 302, 113 A.2d 787 (1955); see In re Estate of Miller, 90 N.J. 210, 221, 447 A.2d 549 (1982) (ruling that an ambiguity in a written instrument "is to be strictly construed against the draftsman").
We are persuaded that paragraph 9 establishes standards regarding the allocation of risk for subsurface or hidden conditions. This is especially so in light of the absence of a provision imposing that risk on the contractor. The standards are defined in the phrases "information ... reasonably obtainable" and "information ... reasonably ascertainable from an inspection of the site." These standards imply that conditions not known to the Authority or to the contractor, information regarding which is not "reasonably obtainable" or "ascertainable" by the contractor, may be the basis of a claim for extra work. Whether information regarding the scour hole's existence was "reasonably obtainable" or "ascertainable" is an issue of fact which cannot be determined on this record.
The Authority relies on other provisions in the contract to support the judgment, especially contract specifications imposing on the contractor the responsibility "for the design and proper functioning of the cofferdams" and responsibility for dewatering of the work site. These and similar provisions do not address responsibility for unknown conditions. See Sornsin, supra, 590 P.2d at 129. We, therefore, reverse for a trial on this issue.
We also reverse the trial court's determination that SMC failed to prove that it incurred additional expenses as a result of the scour hole. The competing contentions regarding the damages issue created factual disputes, including disputes regarding *1227 credibility, not resolvable on a motion for summary judgment.
SMC also claimed that the Authority failed to pay it for all the concrete work SMC performed. Under the contract specifications, concrete work for bid item 7 was to be paid on a lump sum basis and contained within the price submitted for item 7. Concrete work under item 8 was to be paid on the basis of each cubic yard poured. SMC's principal, Campanella, submitted an affidavit contending that he perceived an ambiguity between the specifications and the plans and called that ambiguity to the attention of Mr. Loutzenheiser, the project engineer. According to Campanella's affidavit, Loutzenheiser told him that all concrete would be paid on a unit basis.
Campanella's inquiry was oral and, according to Campanella, Loutzenheiser's response was oral. No document was submitted confirming this conversation. The alleged conversation took place before bids were submitted, and no addendum was issued to other prospective bidders regarding this alleged clarification. The trial court rejected this claim, and we affirm substantially for the reasons stated by the court in its oral opinion. In effect, SMC contends that it modified its bid based on oral information conveyed to it but not conveyed to other bidders. Such a procedure is not permitted because it would give one bidder a competitive advantage over other bidders. See L. Pucillo & Sons, Inc. v. Mayor and Council of New Milford, 73 N.J. 349, 358, 375 A.2d 602 (1977); Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 410, 341 A.2d 327 (1975); Township of Hillside v. Sternin, 25 N.J. 317, 322, 136 A.2d 265 (1957).
We also affirm the trial court's determination that the Authority had not waived its rights under the contract and was not estopped from rejecting SMC's claim for additional expenses incurred as a result of the scour hole.
The trial court's determinations that SMC assumed the risk of all subsurface conditions and failed to prove its damages are reversed and remanded for trial. In all other respects, the judgment is affirmed.
NOTES
[1] A cofferdam is a temporary enclosure placed in a water-course and from which water is pumped, thereby exposing the bed of the watercourse to facilitate construction within the enclosure.
[2] We reproduce from the P.T. & L. opinion the New Jersey contract clauses applicable in that case:

Article 1.2.11 Familiarity with Work:
It is the obligation of the Bidder to ascertain for himself all the facts concerning conditions to be found at the location of the Project including all physical characteristics above, on and below the surface of the ground, to fully examine the Plans and read the Specifications, to consider fully these and all other matter [sic] which can in any way affect the work under the Contract and to make the necessary investigations relating thereto, and he agrees to this obligation in the signing of the Contract. The State assumes no responsibility whatsoever with respect to ascertaining for the Contractor such facts concerning physical characteristics at the site of the Project.
Article 1.2.12 Subsurface Conditions:
It is the obligation of the Bidder to make his own investigations of subsurface conditions prior to submitting his Proposal. Borings, test excavations and other subsurface investigations, if any, made by the Engineer prior to the construction of the project, the records of which may be available to bidders, are made for use as a guide for design. Said borings, test excavations and other subsurface investigations are not warranted to show the actual subsurface conditions. The Contractor agrees that he will make no claims against the State, if in carrying out the Project he finds that the actual conditions encountered do not conform to those indicated by said borings, test excavations and other subsurface investigations.
[P.T. & L., supra, 108 N.J. at 551-55, n. 8, 531 A.2d 1330.]