CAULDWELL-WINGATE COMPANY et al., Appellants, *v.*
STATE OF NEW YORK, Respondent.
(Claim No. 21953.)

Argued November 30, 1937; decided January 11, 1938.

*Charles B. Sullivan, Herbert S. Greenberg* and *Benjamin McClung* for appellants. The contract provisions entitled " Visit to Site," properly construed in relation to the superstructure work under claimants' contract, do not bar recovery. (*Horgan* v. *Mayor,* 160 N. Y. 516; *Sundstrom* v. *State,* 213 N. Y. 68; *Faber* v. *City of New York,* 222 N. Y. 255; *Foundation Co.* v. *State,* 233 N. Y. 177; *Manfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205; *McGovern* v. *City of New York,* 202 App. Div. 317; 235 N. Y. 275; *Leahy* v. *City of New York,* 192 N. Y. 42; *Wright & Kremers, Inc.,* v. *State,* 238 App. Div. 260; 263 N. Y. 615; *Niewenhous Co.* v. *State,* 248 App. Div. 658; 272 N. Y. 484; *People ex rel. Wells & Newton Co.* v. *Craig,* 232 N. Y. 125; *Bird* v. *St. Paul F. & M. Ins. Co.,* 224 N. Y. 47.) The State misrepresented the nature and extent of the foundation project upon which the commencement of claimant's work was stated to be contingent, and is liable to claimants for the delay in completing the foundations. (*Wright & Kremers, Inc.,* v. *State,* 263 N. Y. 615; *Atlanta Constr. Co.* v. *State,* 103 Misc. Rep. 233; *Langley* v. *Rouss,* 185 N. Y. 201; *MacKnight Flintic Stone Co.* v. *Mayor,* 160 N. Y. 72; *Horgan* v. *Mayor,* 160 N. Y. 516; *Faber* v. *City of New York,* 222 N. Y. 255; *United States* v. *Spearin,* 248 U. S. 132.)

The contract provisions entitled " Damages for Delays " have no application to such delays as were caused by the failure of the State to furnish the foundation site, due to its negligence in misdesigning and misrepresenting its own foundation project and in radically changing and increasing the foundation work. (*Horgan* v. *Mayor*, 160 N. Y. 516; *Sundstrum* v. *State*, 213 N. Y. 68; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205; *Leahy* v. *City of New York*, 192 N. Y. 42.) The liability to claimants under the provisions of the enabling act (L. 1931, ch. 701) was fairly established. (*Seglin Construction Co.* v. *State*, 249 App. Div. 476; 275 N. Y. 527.)

*John J. Bennett, Jr., Attorney-General* (*Leon M. Layden, Henry Epstein* and *Joseph I. Butler* of counsel), for respondent. The State did not breach its contract and did not actively or in any other manner interfere with the progress of the work under the contract. The claimant superstructure contractor had full knowledge of the conditions present on the site of the contract at the time it signed the contract. (*Waples Co.* v. *State*, 178 App. Div. 357; *Mack* v. *State*, 122 Misc. Rep. 86; 211 App. Div. 825; *Wright & Kremers, Inc.*, v. *State*, 238 App. Div. 260; 263 N. Y. 615; *Barr & Co.* v. *State*, 127 Misc. Rep. 75; *Cascade Automatic Sprinkler Corp.* v. *State*, 147 Misc. Rep. 420; 247 App. Div. 226; *Weston* v. *State*, 262 N. Y. 46.)

CRANE, Ch. J.   On or about March 1, 1928, Cauldwell-Wingate Company entered into a contract with the State of New York, through the State Office Site and Building Commission, for the construction of a superstructure, State Office Building, New York city, specification No. 5014, project No. 1936, and addenda 1, 2 and 3, which contract was completed and the construction accepted by the State of New York, on or about January 20, 1930. The completion date provided for in said contract was March 31, 1929.

The State had advertised for, and awarded, two separate contracts; one, for the excavation and foundation work; and the other, for the erection of the superstructure. The contract of J. L. McDonald for the foundations was approved by the State on March 10, 1928. The Cauldwell-Wingate contract for the superstructure was approved March 2, 1928.

The Cauldwell-Wingate Company could not begin the superstructure work until McDonald had finished the foundations; consequently, the contract contained the following provision:

" (B) General Description, page 3, paragraph 3.

" Work not included: The work of this contract is contingent upon the execution of the foregoing work by the Foundation Contractor and shall follow said work in orderly sequence. * * * The time of completion specified for the foundation work is July 1, 1928."

What was meant by the " execution of the foregoing work by the Foundation Contractor?" The plans and specifications for this work were submitted to these contractors before bidding, and for the purpose of procuring bids thereon. These were the representations made by the State as to the nature of the foundation, and the work which the foundation company was expected to do, in accordance with its bid thereon. At the time of the advertising for, and of the letting of, each of these two contracts, the site consisted of a city block, the area of which was graded over and entirely covered with a cinder fill, except a small portion, which was occupied by two small brick buildings. The foundation plans and specifications which were furnished Cauldwell-Wingate Company and other bidders on the superstructure " for information pertaining to work included in the foundation contract " showed the elevation and the artificial structures to be removed and only represented thereon the aforesaid two small brick buildings. The superstructure was to be built on a finished foundation to be constructed by the State.

The judge, in his opinion in this case, has found: "The plans furnished McDonald by the State included a cross section and showed ' the elevation and artificial structures to be removed and only represented thereon the aforesaid two buildings.'"

This provision (B), general description in the Cauldwell-Wingate contract, stating, "The work of this contract is contingent upon the execution of the *foregoing* work by the Foundation Contractor and shall follow said work in orderly sequence," has reference to this foundation work shown in these plans and specifications submitted to all of the contractors for the purpose of bidding. This point is to be noted as we go along, as it is decisive of the questions presented.

The contract read as a whole meant this: McDonald was to dig and construct the foundations according to the plans and specifications submitted. No superstructure work could be commenced until the foundation was complete. Cauldwell-Wingate Company made its contract to erect the superstructure upon the completion of the foundation, *according* to the plans and specifications submitted to it. These plans and specifications called for work which could be completed in about three weeks, and so it was stated in the specifications that the foundation work would be completed July 1, 1928. All the bidding, both by the foundation contractor and the superstructure contractor, was based upon the plans and specifications submitted by the State's engineers — the servants and employees of the State — and all of the conditions in the contracts of these two parties must be read, bearing this fact in mind.

What was the superstructure contractor to do immediately upon signing this contract? It was expected to assemble all of its material and working equipment, including the fabrication of the steel, so as to have everything in readiness to proceed on July 1, 1928. It was under severe penalties for delay. The contract allowed nine months to erect the entire superstructure, after the

dates specified for completion of the foundations, and obligated it to the payment of liquidated damages and severe penalties for delay, or failure to complete within the specified time. The Cauldwell Company, by the contract provision above quoted, accepted the contingency of delay in the execution of the foundation contract, but only such delay as was occasioned in the performance *of that contract*, according to plans and specifications. The plans and specifications were its only guide, and the measure alike of its duty and its obligations. If the foundation contractor were delayed in doing its work, the Cauldwell Company assumed such risk. It did not, however, by any provisions of its contract, assume the risk and loss occasioned by the act of the State, in furnishing to both these contractors misleading, imperfect and defective plans and specifications, wherein and whereby the whole scheme of foundation building had to be revised, new plans and specifications adopted, and the work which was to take three weeks necessarily extended for almost a year. Instead of a surface such as represented, there appeared upon further investigation an underground swamp or pond and other obstacles.

The Court of Claims was under the impression that the contractor for the superstructure was bound to make borings to discover the nature of the subsoil, and should have been aware of these conditions. We can find no such onerous duty placed upon this contractor. The information to bidders, entitled, " Visit to Site," leads to no such conclusion. This reads: " Proposals will be held as having been made with full knowledge of conditions and requirements. The Contractor will be held to have visited the premises, prior to the time of submitting his proposal, and to have appraised the conditions under which the work of this contract is to be executed." Very unreasonable indeed would it be to hold that a contractor, whose only work commenced when the foundations were finished, was obliged to make soundings and borings to discover whether the plans and specifications of the State

regarding such foundations were true or false. Whether this were McDonald's duty we need not now determine. Certainly it was no obligation resting upon the super-structure contractor. This apparently was the main argument for rejecting Cauldwell's claim for damages in this case. The Court of Claims made these findings: "That the subsurface of the contract site was found to consist of old foundations, piling and obstructions not shown upon the plans or specifications. That a portion of such old structures had been erected in former days over a pond which once had water to a depth of about fifty feet. That because of the subsurface conditions found on the site the foundation contractor worked nearly one year in excavating whereas had the site complied with surface conditions said excavation should have been performed in about three weeks' time." Consequently the work of the Cauldwell Company, which was to be completed March 31, 1929, was not finished until January 20, 1930 — nine months later.

What effect did this have upon the Cauldwell Company? The Court of Claims has made these findings: "That all construction work was completed December 20th, 1929. That the wages of artisans, mechanics, laborers and other employees in the trades engaged in the construction of the building generally increased May 1st, 1929. That the cost of workmen's compensation insurance likewise increased. That the partial erection of the building in two sections ([as was required to be done]) increased the cost thereof. That some of the sub-contractors had their products and materials ready for delivery before the site was ready to receive them and were obliged to store them. That the work of erecting steel, setting granite, constructing floor and roof arches, laying of concrete and setting of gypsum block is each more expensive to perform in winter than in warm weather." And " that the cost of bronze increased after January 1929."

Now the point is, must the Cauldwell Company, super-structure contractor, suffer this loss when it was occasioned solely because the State submitted to these contractors, in order to induce them to make the contract, misleading and inaccurate plans and specifications? In other words, the State by its initial act misled the parties not only as to the foundation for the building, but the foundation for the contracts, and caused loss in consequence.

The Court of Claims in its opinion has told us: " When McDonald began work with his steam shovel ' it was immediately disclosed upon excavation that beneath said two feet of cinders were foundation walls and masonry footings of about thirty houses, apartments and office buildings super-imposed on wooden piles from fifteen to twenty feet in length which structures had formerly occupied said entire block and a portion of which had been erected in former days over a pond which once had water to a depth of about fifty feet, and these old foundation walls had been covered with said cinder fill.' McDonald was then directed by the State Department of Public Works ' to make thirty-seven composite borings over the entire site which borings were made to varying depths including one boring to the depth of one hundred twenty-seven feet.' These borings ' disclosed the existence of said old foundation and the existence of said pond ' and thereupon the specifications in McDonald's contract ' were changed and altered to require the removal of the old foundations ' which required blasting and other difficult and expensive work resulting in McDonald's being required ' to work nearly one year in excavating * * * when said excavation should have been per-formed, had the site complied with the surface condition, in about three weeks' time.' "

The State radically altered the plans and specifications for the foundation contract, increasing through orders to McDonald the actual foundation construction work and materials by sixty-eight per cent. It recognized its mistake and liability therefor by voluntarily paying to

McDonald for this extra work $168,590.47, besides which McDonald recovered from the Court of Claims $29,622.86, additional cost of excavation. Now it has been held that the superstructure contractor, who had nothing to do with the foundations, must suffer its loss, occasioned in the same way, and for the same reason.

The clauses in the contract, relating to delay, " in the completion of the work by any act or neglect of the State, or by changes ordered in the work," and the damage clause, have no reference to delays and damages caused, as above stated, through the direct interference and misrepresentations of the State. The delay was caused before any work was commenced, not during its performance; and, as stated, it was due to acts not within the contemplation of the parties when they were induced to make their contracts by misleading and deceptive plans and specifications. This is not a case where plans, according to which a contractor has made his bid and entered into his contract, have been subsequently changed by the architect or the State to comply with different ideas or requirements, and for which changes the contractor is to be allowed, if they cost more money. These are changes and modifications which have been occasioned by acts or failure of the State, whereby the superstructure contractor, through no fault of its own, has suffered a loss. It will receive no compensation, except under the act of the Legislature, chapter 701 of the Laws of 1931, which has permitted the contractor to sue the State.

A similar situation arose with the excavations for the State Office Building in Albany. In digging the foundations, the contractors ran into quicksand, which required complete readjustment and modification of plans and specifications, as well as delay. For this the State was considered liable to the contractors; in fact the State admitted its moral obligation. After the enabling act, chapter 692 of the Laws of 1931, the Court of Claims made certain awards, which were reviewed by the Appellate Division and this court. We held the Court of

Claims was justified in making the award. (*Seglin Construction Co.* v. *State of New York*, 275 N. Y. 527.) The contract provisions regarding delays were similar to those in this case.

*Wright & Kremers, Inc.*, v. *State of New York* (263 N. Y. 615) and *Weston* v. *State of New York* (262 N. Y. 46) are not in conflict with this present ruling, as neither rested upon misrepresentations and direct interference by the State. Even in the *Wright* case the State was held liable for the delay caused in failing to turn over the site by the removal of a wall, so as to permit the work to proceed. What we are holding in this case is in harmony with such cases as *Faber* v. *City of New York* (222 N. Y. 255); *Sundstrom* v. *State of New York* (213 N. Y. 68); *Horgan* v. *Mayor* (160 N. Y. 516). The law is well stated in *Foundation Co.* v. *State of New York* (233 N. Y. 177): " A contract and specifications may contain representations as to existing physical conditions. If so, a bidder may rely upon them, even though it be provided that he shall satisfy himself by personal inspection and investigation as to their truth, where because of time or situation such investigation would be unavailing (*Faber* v. *City of New York*, 222 N. Y. 255); or statements may be made on which the bidder, because of the language of the contract, cannot rely. He may have agreed that he will not. Then if they are made in good faith he takes the risk of their accuracy " (p. 184).

The contract in the *Foundation* case required foundations to rest on bed rock. The contractor apparently relied upon boring sheets which the court said were not part of the plans and specifications or representations. Even then this court was divided. In the case now before us the plans and specifications were an integral part of the contract, furnished " for information pertaining to work included in the foundation contract."

Each case necessarily depends upon its own facts, and we find them here entirely different from those in *Niewenhous Co.* v. *State of New York* (272 N. Y. 484), where the

moist and soft nature of the ground indicated to the contractor the nature of the soil he would encounter in digging foundations. (See statement of facts, 248 App. Div. 658.) Here the plaintiff had nothing to do with the foundations. It had the contract for the superstructure to be erected as soon as the foundations were completed. It was under no obligation to make borings to ascertain whether the foundations could be completed within the specified time. It entered into its contract, as above stated, upon the representations of the State regarding these foundations, and upon plans and specifications submitted by the State, indicating that the foundation work could be done within three weeks. The site for its work was to be ready in that time; the State did not furnish the site until nine months later.

The judgments should be reversed, and the claim remitted to the Court of Claims for a rehearing, with costs in all courts to abide the event.

LEHMAN, J. (dissenting). The claimant's contract was confined to the erection of the superstructure of the State Office Building in the city of New York. The superstructure could not be erected until the foundation work was completed. A separate contract for the excavation and foundation work was awarded to J. L. McDonald. The plaintiff's contract, made on or about March 1, 1928, provided: " The work of this contract is contingent upon the execution of the foregoing work by the Foundation Contractor and shall follow said work in orderly sequence. * * * The time of completion specified *for the foundation work* is July 1, 1928." (Italics throughout are mine.) The claimant expected to begin its work about the time so specified. Its expectations were disappointed. The foundation was not completed by J. L. McDonald and accepted by the State until about February 28, 1929. The unanticipated delay in the completion of the foundation work caused delay in the commencement and in the completion of the work specified in the claimant's

contract and additional expense to the claimant in the performance of the work. The plaintiff has been paid the contract price for the work performed under the contract. In this action it makes claim for the damages caused by the delay.

The claimant's contract provided (Article 33):

" Extension of time: If the Contractor be delayed in the completion of the work by any act or neglect of the State, or by changes ordered in the work, or by any cause which the Architect shall deem to justify the delay as being beyond the Contractor's control, then the time of completion shall be extended for such reasonable time as the Architect may decide."

" Damages for delays: No charges or claim for damages shall be made by the Contractor, under the provisions of this Article, for any delays or hindrances, from any cause whatsoever, during the progress of any portion of the work embraced in this contract. Such delays or hindrances shall be compensated for under the provisions of Article 33." (Article 36.)

The question presented upon this appeal is whether by these two provisions of the contract the claimants expressly assumed the risk and burden of the damages caused by the delay in the completion of the foundation work.

As Chief Judge CRANE points out in his opinion, the site of the proposed building was entirely covered by a cinder fill except a small portion which was occupied by two small buildings. The engineers of the State did not know or discover that there were old foundations, piling and other obstructions underneath the cinder fill and that an old pond upon the site had been filled in. Not knowing of the existence of these conditions, the State engineers failed to provide in the plans and specifications for their removal. J. L. McDonald's contract for the excavation and foundation work, which the parties knew must be completed before work on the superstructure could begin, was based upon these plans and specifications. The

plans and specifications were furnished to all bidders, including the claimant, "for *information* pertaining to work included in the foundation contract." The excavation work called for by these original plans and specifications could have been completed within three weeks. The excavation which J. L. McDonald was required to perform under plans and specifications amended to take care of actual conditions as disclosed when the cinder fill was removed was not completed for almost a year. The State maintained the right to make such changes, for its contracts provided (Article 23): "Changes and extension of time: The State without invalidating the contract, may make changes by altering, adding to or deducting from the work, the contract sum being adjusted accordingly."

Perhaps the State was at fault in failing to discover the actual conditions, and in preparing its plans and specifications accordingly and, perhaps, the plaintiff, in calculating the probable time when it could begin work upon its contract, might reasonably place reliance upon the plans and specifications furnished by the State without independent investigation. I will assume that the delay was due solely to the fault of the State. Even that assumption does not form any basis for a valid claim for damages against the State, for the claimant has expressly agreed that no " claim for damage shall be made * * * for *any* delays or hindrances, from *any* cause whatsoever, during the progress of any portion of the work embraced in this contract " and has further expressly agreed that " *any* delays " shall include delays caused by " *any act or neglect of the State, or by changes ordered in the work.*" It would be difficult to devise language more inclusive or plainer, and the claimant having voluntarily made the agreement must abide by the consequences.

The claimant, then, cannot recover unless the State has is some respect breached its contract, and because of that *breach* the claimant was delayed in beginning its

work. The record fails to show such breach. The claimant's contract provided expressly that the work " is contingent upon the execution of the foregoing work by the *Foundation* Contractor " and by no possible process of construction can the " foregoing work " be limited to the *excavation* work shown by the plans and specifications. Approval of claimant's progress schedule was expressly conditioned upon " the execution of the *foregoing* work." The " foregoing work " certainly includes the *foundation* work, and fault in the preparation of specifications for the excavation, error in preliminary determination of the amount of the excavation work required, even negligent misrepresentation as to conditions, would not make inapplicable the provision of the contract that the delivery of the site to the claimant and the beginning of the work of erecting the superstructure was to be contingent upon the completion of the foundations for the superstructure, or the provision that there may be no claim for damages caused by delay due to the " act or neglect of the State." The parties chose to stipulate that the plaintiff assumes the risk of all delays unless the defendant is guilty of a breach of an affirmative covenant, and in the cases in this court cited by the appellant, recovery has been allowed only because of breach of such a covenant. Here there has been no such breach.

Judgment should be affirmed.

HUBBS, LOUGHRAN and RIPPEY, JJ., concur with CRANE, Ch. J.; LEHMAN, J., dissents in opinion, in which O'BRIEN and FINCH, JJ., concur.

Judgment accordingly.