■ JOHNSON, DRAKE & PIPER, INCORPORATED, Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 42438.) — *Per Curiam.* Cross appeals from a judgment of the Court of Claims which (1) awarded claimant damages for breach of contract occurring in the course of the performance of its contract for construction of a portion of the Cross Bronx Expressway and (2) awarded damages to the State on its counterclaim for the recovery of overpayments made to claimant on account of the latter's agreement to supply watchman service. The State first contests claimant's recovery under the first cause of action in its claim, which is for the cost of excavation above a tunnel constructed pursuant to the contract. The excavation was not provided for by the contract but was ordered by the State, and the sole issue is as to the unit price to be allowed, the Court of Claims awarding at the rate of $35 per cubic foot, under item 2X of the contract, as against the State's contention that compensation should be at $3 per cubic foot, under item 2S, or, alternatively, on the basis of *quantum meruit.* It is true, as the State asserts, that, under item 2X, excavation between the vertical planes of two designated stations and within the payment lines shown on the plans was to be paid for at the 2X rate; and, further, that the material excavated was not within these lines; and the court so found; but it was also provided that excavation ordered by the engineer beyond the neat lines shown on the plans would be paid for "under the appropriate Contract items". The excavation in issue was above the portals and beyond the payment lines, but it does not necessarily follow, merely because this excavation was not originally contemplated and was not within the tunnel, that the item 2X rate does not apply; and that rate was correctly applied by the Court of Claims on the ground, among others, that, under the contract provisions, item 2X specifically included all the excavation between the east and west faces of the tunnel, the court finding, also, that the work was largely rock excavation similar to that required in the tunneling operation proper "and required the same type of equipment, blasting, mining labor and removal as did the tunnel rock excavation." The decision is supported, further, by claimant's expert's analysis of the cross

sections furnished by the State to bidders, indicating, according to his testimony, that item 2S covered only excavation west from the west portal and east from the east portal and that excavation between the two portal stations was within item 2X. The award upon the first cause of action must be affirmed. The second cause of action was also sustained and claimant was awarded damages thereon for extra work of regrouting performed, under protest, after proper completion of the grouting work required by the contract. The contract specifications required that the contractor "take special care in the concreting operations for the encasement of the steel girders and wall columns to produce a dense, compact concrete free from voids or honeycombs. The concrete shall be in intimate contact with the exposed faces of the rock excavation." This "intimate contact" was to be effected by several methods, including grouting, that is, by forcing concrete into the spaces through pipes embedded in the roof and wall of the tunnel. There was evidence, which the court was warranted in accepting, that the first grouting operation complied with the contract requirements and that the two successive grouting operations which the State directed, to eliminate leakage in the tunnel roof, were not required by the contract or necessary to comply therewith and that claimant should be compensated for the additional work. The record amply supports the trial court's conclusion that the State's engineer unreasonably and mistakenly construed the contract provision for effecting "intimate contact" as meaning to render waterproof, although in State contracts waterproofing is the subject of different specifications, which were not utilized in this contract, and which clearly indicated to the court "that this item of grouting would have been done very differently and would have been much more costly to the State if waterproofing had been specified instead of 'intimate contact.'" There was, indeed, an abundance of proof that by accomplishing "intimate contact", required for support and like structural reasons, seepage and leakage would not be prevented without recourse to the additional and different process of waterproofing. The award upon this cause of action is not disputed as to amount and should be affirmed. Claimant's fourth cause of action, upon which it recovered a portion of the damages claimed, was for the cost of work, not provided for in the contract, of placing and twice relocating, in accordance with the State's orders, a temporary street curb of 12 inch by 12 inch timbers along a sewer and water line excavation. The State's liability was established by the substantially uncontradicted testimony of claimant's engineer and damages were properly awarded according to an undisputed unit price, from which the court made deductions for minor deficiencies in performance. Claimant recovered, also, on its fifth cause of action for damage caused by the State's interference with claimant's subcontractor's work of excavating near an apartment building, the interference resulting from faulty design of the project of underpinning the building, this necessitating drastic revision with the result that the area in which the excavating subcontractor could work was greatly restricted and his work delayed and rendered more costly in consequence. (Inasmuch as neither party refers to the provision of the contract providing that the "designing of the underpinning shall be done by the Contractor, and complete plans therefor shall be submitted to the Engineer for his approval", we do not give it weight.) Claimant itself contracted to do the underpinning and hired a subcontractor to do the work. The contract contains specific references and warnings as to the underpinning to be done and broad clauses as to the necessity for co-ordination of work and as to the availability and nonavailability of sites, accompanied by comprehensive exculpatory clauses. It is clear, of course, that despite exculpatory clauses in a contract, the State may be held liable for damages caused by its active interference, misrepresentation and miscalculation.

(See *Cauldwell-Wingate Co.* v. *State of New York*, 276 N. Y. 365.) Here, however, there is no proof that the original plans for the underpinning work were faulty and this record does not require us to infer that they were, merely because the plans were redesigned and the work took longer and cost more than had been anticipated; and we conclude that claimant has not sustained its burden of proving active interference on the part of the State, and that this cause of action must be dismissed. Upon its seventh cause of action, claimant recovered damages for the loss found to have been incurred in transporting certain surplus excavation material to the Bronx State Hospital site, by direction of the State's representative and "contrary to the provisions of the Specifications and intendment of the Contract". Claimant's loss is predicated on its being thus prevented from selling this material to the City of New York. We construe the provision of the contract that surplus material of this nature "shall be disposed of as directed" to mean according to the reasonable direction of the State's representatives and that, at most, claimant would be entitled only to the transportation costs, which it has neither pleaded nor proved. Further, we find in the contract no indication that the excavated material should become the property of the contractor or subcontractor so as to be marketable by it. Consequently, this cause of action must be dismissed. Finally, the State contests the court's award of interest upon the amount of claimant's recovery under its eleventh cause of action, had by a prior judgment, which was granted July 1, 1963, following severance pursuant to an order of June 25, 1963. (The award was not "the sum of $69,900.67 for interest on the amount tendered", as stated in the State's brief, but the sum of $12,773.79 plus $1,669.11.) The State did not oppose the motion for severence and although there was no formal stipulation, it was specifically noted that the Attorney-General appeared and did not oppose and the order reserved the question of interest until determination of the remaining causes of action, there being no indication or any suggestion that the Attorney-General did not concur in all the provisions of the order. In this situation we find *Higgins & Sons* v. *State of New York* (20 N Y 2d 425) controlling, rather than *Wood* v. *State of New York* (12 N Y 2d 25) as distinguished in *Higgins,* the identical Public Works specification that the contractor's refusal to accept the tendered final payment " 'shall constitute a waiver of any right to interest thereon' " being relied upon by the State in those cases as in this. Here, in addition, as in *Higgins* (*supra,* p. 429), "claimant was successful * * * in establishing a right to additional moneys, [and] it would seem that he is entitled to interest on the amount of the severed claim." We find no sufficient reason for modification, as sought by claimant on its cross appeal, with respect to the date from which interest was allowed. (See *Merritt-Chapman & Scott Corp.* v. *State of New York,* 25 A D 2d 455, 456.) Consequently, this award should be sustained. Claimant, further by its cross appeal, contests the State's recovery on its counterclaim. Claimant's agreement to supply uniformed watchman service at a per diem rate was subcontracted. The subcontractor was found, upon competent and convincing evidence, to have been paid for 3,887 11/16 man-days in excess of the man-days actually expended; and the award, therefore, must be affirmed. Neither the remaining causes of action nor the parties' additional contentions require discussion. Judgment modified, on the law and the facts, in accordance with this memorandum decision, so as to reduce the award to $331,122.18 and appropriate interest, and, as so modified, affirmed, without costs. Gibson, P. J., Herlihy, Aulisi and Staley, Jr., JJ., concur in memorandum Per Curiam.