■ GREEN ISLAND CONTRACTING CORP., Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 58109.)—Appeal from a judgment in favor of claimant, entered August 27, 1975, upon a decision of the Court of Claims. Claimant was the successful bidder on a road-paving contract to be performed in the Counties of Hamilton, St. Lawrence and Franklin. The claimant subcontracted the asphalt laying work to one Inkatron Paving Corp., who, in turn, obtained the asphalt from Cirillo Brothers in Albany. Without consulting either the claimant or Inkatron, the State directly contacted Cirillo to explore the possibility of including within the asphalt cement an experimental antistripping additive (ACRA-500) to improve the adhesive qualities of the asphalt. They agreed on a 1% mixture of the additive with the asphalt and made arrangements for the mixing. The claimant was notified of this change, after the fact, in late August, 1972. On August 28 a representative of the State went to Cirillo to obtain a sample of the additive but the sample was not tested. The sample was subsequently lost and neither it nor its container could be produced at trial. The additive as used in a base coat of the asphalt did not appear to cause any problems, but when the top course was laid, it failed to bind to the lower coat,

wherefore 2,075.73 tons of asphalt were required to be removed and replaced with asphalt containing no additive. It was ultimately learned that the additive had been contaminated with a thinning agent derived from petroleum or kerosene. There is evidence indicating that the contaminating agent could have readily been discovered on August 28 had the State examined the sample. The Court of Claims found that the State had made Cirillo its agent for the supply of asphalt containing additive and was therefore liable to the claimant for interference with the contract. The State contends, however, that since Cirillo was the supplier for claimant's subcontractor, claimant should bear the responsibility for the consequences of any negligence on Cirillo's part. There is no merit to this position. Claimant's contract with the State contained specifications for the type of asphalt to be provided. It was not until later that the State, acting unilaterally, elected to employ an additive in the asphalt on an experimental basis. Dealing directly with Cirillo, the State made arrangements for this additive, and subsequently issued a change order by which claimant was advised that an additive was being included. Claimant was never actually advised of the particular specifications for the additive or for its incorporation into the asphalt. The court thus found that the State was responsible for that portion of the execution of the contract dealing with mixing the asphalt with the additive, and since that mixing proved to be a source of problems such as to delay, interfere with, and increase the work as a result of improper ingredients, the State would be required to bear the responsibility. We are in full agreement with this conclusion for the comprehensive reasons set forth in the decision of the Court of Claims which have ample support in the record; moreover, this conclusion is fortified by the finding, also amply supported and with which we also agree, that the presence of a contaminant in the additive could have been discovered before its use had the State employed even the most fundamental tools of observation. As a consequence of the additive contamination, claimant and its subcontractor were required to undo and then redo work which had already been done, and also was delayed in the performance of other work which claimant contends had to be done at greater cost because the delay caused such work to be done out of sequence. Clearly claimant is entitled to be compensated for its damages (see, e.g., *County Asphalt v State of New York,* 40 AD2d 26; *Johnson, Drake & Piper v State of New York,* 29 AD2d 793, 794). The State complains, however, that certain elements of the award are unsupported by the proof or erroneously computed. For cause of action one (a), the court awarded claimant the contract price of $12 per ton for 2,075.73 tons of asphalt which had to be removed after it was laid. The State's objection is based on the contention that this figure exceeds claimant's actual cost. While factually true, this contention is legally meritless. As a result of the State's negligence, and through no fault of claimant or its paving contractor, Inkatron, additional work was required. Had such work originally been contemplated under the proposal, the bid by claimant as well as other bidders undoubtedly would have included an element of profit. In numerous breach of contract claims where a contractor has been required to perform additional work, the State has consistently taken the position that no further compensation is forthcoming if the contractor is paid for such work at the contract rate. In fact, the State takes that position here with regard to the third cause of action. Cases setting forth the rule that a contractor is entitled to recover its increased costs resulting from a breach of contract requiring extra work invariably deal with situations where the claim is for costs *beyond the contract price* (see, e. g., *County Asphalt v State of New*

*York, supra).* We see no reason in fact or law in the present case for awarding claimant less than the contract unit price. Cause of action three* seeks damages resulting from delay which is claimed to have increased the costs of certain work. The work involved was contract work for which claimant was paid, according to the contract, not extra work, yet the claim sought all of claimant's costs and expenses for the period from October 26, 1972 to November 15, 1972 on the theory that claimant would have completed the project by October 26 but for delays caused by the State. By claimant's own proof, the charges for November 9 through November 15 are the costs of cleaning up damage resulting from heavy rainstorms. Clearly the State is not liable for acts of nature, and the Court of Claims properly disallowed recovery on this portion of the claim. For the remainder of the period, the court awarded claimant the sum of $66,513.81 with no explanation as to how it arrived at this figure or statement of findings upon which it is based. Claimant did submit testimony that its costs of performing during this period were higher, but there was no evidence as to the proportion of costs attributable to the delay which would not otherwise have been incurred. Clearly claimant is not entitled to recover its costs and expenses in full for contract work for which it was paid under the contract, yet it appears that the court did award claimant the full amount. Since the evidence is insufficient to permit this court to determine the appropriate award, so much of the judgment awarding claimant the sum of $66,513.81 plus interest on its third cause of action must be reversed and a new trial must be had on the issue of damages. Judgment modified, on the law and the facts, by reversing so much thereof as awarded damages in the amount of $66,513.81 on claimant's third cause of action together with the interest thereon, and matter remitted for a new trial limited to the issue of damages on said third cause of action, and, as so modified, affirmed, without costs. Koreman, P. J., Greenblott, Main, Larkin and Reynolds, JJ., concur.

---

* No objection is raised by the State regarding the awards for causes of action one (b) and two.