Wachtler, J.
(dissenting). The trial court committed no error of law in refusing to charge the jury that the “no-damage-for-delay” clause exempted the city from liability for its delays unless the city acted with “bad faith” or deliberate intent to delay the contractor’s performance. That has never been the law in this State as the city readily conceded in its brief and on oral argument. What the city actually requests is a change in the settled meaning of the contractual term, after the parties have entered into the contract. Basic principles of fairness and stare decisis should preclude the court from granting the city this relief.
At the trial the court rejected the city’s requested charge, submitted the following interrogatories to the jury and received the responses indicated:
“Was the delay, interference or obstruction within the contemplation of the parties at the time the contract was made? Answer: Yes.
“Even if the parties could have contemplated the delay or obstruction, was the delay or obstruction caused by conduct by the City constituting active interference with the plaintiff’s performance? Answer: Yes.”
The city did not object to these interrogatories, and indeed consented to the court’s submitting them to the jury. The majority holds that this action by the city does not constitute a waiver because the interrogatories merely summarized the charge on which the court had already ruled, so that any further objection would have been futile. In its brief, however, the city concedes that there is an even more fundamental reason why further objection would have been futile.
The city states: “[The] City had no basis in law to object. The interrogatories follow precisely the decision of the *388 Appellate Division, Third Department, in Peckham Road Co. v. State, 32 A.D. 2d 139, *** aff’d *** 28 N.Y. 2d 734 * * *. Peckham is, we believe, the most recent instance in which the ‘no damage’ issue was presented to this Court. It is cited by contractors constantly as the New York rule on this issue. There the Appellate Division reversed the trial court and enforced the exculpatory clause to bar recovery but stated [at pp 141-142]: ‘If the delay or obstruction is within the contemplation of the parties at the time the contract is entered into the “no damage” clause will be valid and enforceable unless the delay was caused by conduct constituting active interference with the contractor’s performance (see Cauldwell-Wingate Co. v. State of New York, 276 N.Y. 365)’ * * * [c]learly, the interrogatories correctly reflect the rule established in Peckham which this Court had affirmed.”
Thus the city itself concedes that the trial court’s interpretation of the meaning and effect of the “no-damage-for-delay” clause was correct under existing law. Its argument that the contractors should have been required to prove “bad faith” or “deliberate intent” instead of mere active interference, in order to recover for the delays occasioned by the city calls for a change in the law which would reduce the city’s contractual liability and, of course, also diminish the contractor’s right to compensation for delays attributed to the city.
A court is bound to follow precedent unless the need for a new rule of law far outweighs the need for stability, predictability, and uniform application of the settled rules (see, e.g., Matter of Eckart, 39 NY2d 493; People v Hobson, 39 NY2d 479; 20 Am Jur 2d, § 187, p 523). Indeed there are precedents which establish guidelines a court must follow in determining whether an existing precedent should be overruled. Primary among them is the rule that courts should be most reluctant to change the law affecting contractual rights and commercial dealings generally (Matter of Eckart, supra, at p 500; People v Hobson, supra, at p 489; 20 Am Jur 2d, § 192, p 529; Loughran, Some Reflections on the Role of Judicial Precedent, 22 Ford L Rev 1, 4; Cardozo, *389 Nature of the Judicial Process, p 151). Even those, like Justice William O. Douglas, who have urged that the doctrine of stare decisis has been too rigidly applied in some areas of the law recognize a greater need for “uniformity and continuity” to preserve “the integrity of contracts” and other matters dealing with commercial and property rights (see, e.g., Douglas, Stare Decisis, 49 Col L Rev 735-736).
There are several reasons why the courts should exercise an extra measure of self-restraint in this type of case, most of which are obvious. In general terms, as former Chief Judge Loughran cautioned some time ago, “[I]t is important to bear in mind that the overruling of a precedent may often cause more harm than good by the unsettling effect that it may have upon transactions concluded in reliance on the previously declared rules” (Loughran, op. cit., p 4). Those engaged in business enterprises have a need to know with reasonable certainty the legal consequences of their actions before they make contractual arrangements (People v Hobson, supra, at p 489). Changes in the law retroactively altering the legal effect of contractual terms frustrates the legitimate expectations of those who relied upon the prevailing law and has an unsettling effect on the business community (People v Hobson, supra, at p 489). Thus in cases involving property and contractual rights “where it can reasonably be assumed that settled rules are necessary and necessarily relied upon, stability and adherence to precedent are generally more important than a better or even a ‘correct’ rule of law” (Matter of Eckart, supra, at p 500).
In fact there is rarely a compelling need for judicial intervention to correct an “erroneous” but long-standing interpretation of a contractual term. Unlike constitutional rulings, where the only alternative to court correction of court-created error is the cumbersome process of constitutional amendment (People v Hobson, supra) or “erroneous” statutory rulings, which may be rectified by the simpler but still imposing legislative process (Matter of Eckart, supra, at pp 498-500), a party who is discontent with a court’s interpretation of a contractual term may easily correct the “error” in future cases by simply redrafting the *390 contract. In short, in cases where the court is asked to correct an “erroneous” precedent interpreting a contractual term the potential adverse effects are rarely justified or outweighed by any need to provide a “better” rule for the future.
A proper consideration of these factors should require the court to adhere to precedent in the case now before us. The “no-damage-for-delay” clause has been a standard feature in public contracts in this State for many years (see, e.g., Cauldwell-Wingate Co. v State of New York, 276 NY 365; Wilson & English Constr. Co. v New York Cent. R. R. Co., 240 App Div 479; 10 NY Jur, Contracts, § 355, pp 336-338). Despite its broad wording it has been consistently held to permit a contractor to recover for delays occasioned by active interference by the municipality (see, e.g., Cauldwell-Wingate Co. v State of New York, supra; Johnson v City of New York, 191 App Div 205, affd 231 NY 564; Ippolito-Lutz, Inc. v Cohoes Housing Auth., 22 AD2d 990; Norman Co. v County of Nassau, 27 AD2d 936). Although, of course, the city would not be permitted to claim the benefit of the exculpatory clause where it had acted with bad faith or deliberate intent to delay performance (see, e.g., People ex rel. Wells & Newton Co. v Craig, 232 NY 125), that has never been held to be a necessary component of active interference. Indeed in many cases the courts of this State have recognized the right of public contractors to recover for delays, despite the exculpatory clause, where the State, municipality or other owner has merely failed to carry out its obligations to provide proper plans, materials, services or supervision of the worksite (see, e.g., Johnson v City of New York, supra; Cauldwell-Wingate Co. v State of New York, supra; Wilson & English Constr. Co. v New York Cent. R. R. Co., supra; Ippolito-Lutz, Inc. v Cohoes Housing Auth., supra; Norman Co. v County of Nassau, supra; Peckham Rd. Co. v State of New York, 32 AD2d 139, affd 28 NY2d 734).
Municipalities and public contractors who enter into public contracts are not neophytes ignorant of the legal consequences of standard contractual terms which have been repeatedly interpreted and applied by the courts (cf. Levine v Shell Oil Co., 28 NY2d 205). As the majority notes *391 this case involves “sophisticated contracting parties”. In addition the evidence shows that both sides knew that there would be delays in the performance of the contract. Under settled law that meant that the contractor might be entitled to additional compensation if the delays were occasioned by the city’s active interference, even if the city acted in good faith with no deliberate intent to interfere with the contractor’s right to complete performance in the time specified.
If the city was not willing to accept the bid on those terms it should have altered its contract accordingly (cf. Conduit & Foundation Co. v State of New York, 52 NY2d 1064; Peckham Rd. Co. v State of New York, supra). Then the contractor would have been on notice that it could not recover for delays which would generally be compensable as a matter of law and could have adjudged its bid to cover this additional risk. In future cases the city is free to follow this course if, as it contends, it finds the legal effect of its current contract financially unacceptable. The court, however, should not alter-the settled meaning of a standard clause in a municipal contract after the contract has been awarded to a public bidder, particularly where the successful bidder has fully performed its part of the bargain.
Accordingly, I would affirm the order of the Appellate Division.
Judges Jasen, Meyer and Simons concur with Judge Fuchsberg; Judge Wachtler dissents and votes to affirm in a separate opinion in which Chief Judge Cooke and Judge Jones concur.
Order reversed, etc.