*704 OPINION OF THE COURT
Susan F. Avery, J.
Factual Background
In this nonpayment proceeding respondent filed an answer in person, dated August 15, 2011, alleging a “general denial” to the allegations of the petition and stating that “there are conditions in the apartment which need to be repaired and/or services which the [petitioner has not provided” (see answer dated Aug. 15, 2011 1i 10). The matter first appeared on this court’s calendar on August 22, 2011. On that date, the matter was adjourned to October 11, 2011. (Inexplicably, contained in the court file is a proposed stipulation, dated October 11, 2011, signed by respondent and counsel for the petitioner, whereby respondent alleged the existence of, and the petitioner agreed to inspect and repair as needed, the following conditions: “kitchen sink pipe and window balances in the livingroom, kitchen and bedroom.” There is nothing in the file explaining the reason the court [John Lansden, J.] did not “so-order” the proposed stipulation.) On October 11, 2011, the case was adjourned to November 29, 2011, for an “APS referral.” On that date, the respondent failed to appear, and judgment was entered against the respondent.
On November 30, 2011, the respondent filed a self represented order to show cause, seeking to vacate his default from the previous day. The application was “withdrawn” and the court file contains a marking “[because] no warrant has been issued.” Thereafter, by order to show cause dated January 17, 2012, the Legal Aid Society sought to vacate respondent’s November 29, 2011, default. The order to show cause was initially returnable on January 26, 2012. In support of the order to show cause was an affidavit from the respondent, but a notice of appearance by the Legal Aid Society, amended answer, or proposed amended answer was not filed.
On January 26, 2012, the order to show cause was adjourned, by a “two attorney” stipulation, to March 13, 2012. The stipulation required petitioner to “inspect and repair” the “ceiling leak over the toilet, defective bathroom vent, apartment windows, which do not stay up, mold in the hallway, plaster and paint the entire apartment and hole in the pipe underneath the kitchen sink.” The stipulation also authorized respondent’s attorney to communicate directly with petitioner’s assistant manager to arrange access dates for the repairs.
*705 On March 13, 2012, the order to show cause was adjourned, by a “two attorney” stipulation, to April 23, 2012. The stipulation required petitioner to inspect and repair the ceiling leak over the toilet, defective bathroom vent (“not venting out”), and mold in the hallway, and to plaster and paint the entire apartment. The stipulation provided for one day of access (Mar. 23, 2012) with “further access to be arranged” and contained a (unidentified) telephone number.
On April 23, 2012, the order to show cause was adjourned, by a “two attorney” stipulation, to May 15, 2012. The stipulation required petitioner to “complete outstanding repairs.” The repairs were listed as follows: “(a) leak over the toilet, (b) mold in the hallway [and] (c) bathroom vent defective.” Three access dates were scheduled with additional access to be arranged with the listing of two (unidentified) telephone numbers.
On May 15, 2012, the order to show cause was adjourned, by a “two attorney” stipulation, to June 18, 2012. The stipulation required petitioner “to inspect repairs as necessary.” The repairs were listed as follows: “(1) ceiling leak over the toilet, (2) mold in the hallway [and] (3) bathroom vent defective.” Three access dates were scheduled with additional access to be arranged with the listing of two (unidentified) telephone numbers.
On June 18, 2012, the order to show cause was adjourned to July 10, 2012, pending a June 25, 2012, inspection of the premises by the Department of Housing Preservation and Development (DHPD). Listed on the request for inspection were the following conditions: “mold on walls in the bathroom and the bathroom vent not working, bathroom pipe leaks, hallway walls have mold and the window chain in the living room and small bedroom.” The return of the inspection report showed violations for the window chains and the mold on the bathroom walls; no violations were reported for the bathroom vent, bathroom pipe and mold on the hallway walls.
By a “two attorney” stipulation, dated July 10, 2012, respondent’s order to show cause was granted on consent and respondent’s default was vacated, the petition was amended to date to seek $4,509 and the case was further adjourned to July 31, 2012, for “trial/settlement.” The stipulation did not address any conditions in need of repair in the apartment. On July 31, 2012, the matter was further adjourned to September 10, 2012, “for trial.”
By a “two attorney” stipulation, on September 10, 2012, the matter was adjourned to October 22, 2012, “for trial.” The stip *706 ulation also provided that on October 8, 2012, the petitioner was required to “reinspect the alleged mold condition.”
On October 22, 2012, the court file indicates that the matter was further adjourned to November 19, 2012.
By a “two attorney” stipulation dated November 19, 2012, the case was adjourned to January 8, 2013, with no purpose given, and the stipulation was silent as to repairs/conditions.
A copy of an email dated January 7, 2013, is in the court file. The email states that it was sent by Ms. Mimi Rosenberg of the Legal Aid Society to Mr. James Bayley, counsel for the New York City Housing Authority, and reads as follows:
“Thank you for your cooperation in adjourning to 2/25 [sic] the abatement hearing scheduled for 1/8 [sic] for Arcadio Ramos ... I will try to and would appreciate it if NYCHA management might notify Mr. Ramos not to come to court as he is quite ill and a needless strain on him if it can be avoided would be considerate.”
On February 25, 2013, by a “two attorney” stipulation, the proceeding was further adjourned to April 15, 2013, for “trial or resolution” as “respondent is hospitalized today.” The stipulation was silent as to whether conditions in need of repair existed in the apartment.
On April 15, 2013, the case was transferred to the Expediter (Part X) with a notation on the transfer order that “respondent] wants an abatement pet[ition]er does not offer anything at this time.” The markings on the court file show that the case was adjourned in Part X to June 3, 2013, and then to July 15, 2013.
On July 15, 2013, by a “two attorney” stipulation, executed in Part A, the matter was adjourned “until 8/19/13 [sic] for petitioner to serve opposition papers.” The stipulation was not “so-ordered.” By order to show cause dated July 11, 2013, respondent, through counsel, commenced the instant application.
The Instant Application
Respondent, through counsel, moves by order to show cause for an order granting respondent leave to interpose an amended answer (annexed to the moving papers), and deeming said proposed amended answer to have been properly served. Petitioner opposes the motion.
*707 Proposed Amended Answer
The proposed amended answer seeks to add a “FIRST AFFIRMATIVE DEFENSE” alleging that there are conditions in need of repair in the apartment, including the 10 specifically enumerated in the proposed pleading (11 2) along with the allegation of “sporadic elevator service” (11 3), which “constitute a breach of the warranty of habitability entitling respondent to an abatement of the rent” (11 4).
The proposed “SECOND AFFIRMATIVE DEFENSE” alleges that as a result of damage caused by Hurricane Sandy, the building was without water, heat and electricity (1i 5); the lack of electricity caused there to be “no elevator service” (If 6); the subject premises are located on the 13th floor (1Í 6); and “Respondent was constructively evicted from the subject premises for a period of five [5] weeks.”
The proposed pleading also asserts a “counterclaim” seeking an order directing the petitioner to “correct such conditions as [sic] constitute a violation of the Housing Maintenance Code.”
The “WHEREFORE” clause of the proposed pleading seeks a “judgment dismissing the petition with prejudice” and an order directing the petitioner to correct the conditions constituting violations of the Housing Maintenance Code.
Respondent’s Arguments
In his affidavit in support of his motion, respondent argues that throughout this proceeding, and during the course of a prior proceeding (landlord & tenant No. 30876/2009), respondent has been requesting that petitioner inspect and repair “certain, very specific repairs to my apartment” (Ramos off If 3). Therefore, respondent concludes, there will be no surprise or prejudice to the petitioner if the respondent’s motion was granted and the proposed answer was interposed.
Petitioner’s Arguments
Petitioner opposes the motion arguing that the application was brought on the “eve of trial” (Bayley affirmation 1f1f 2, 4), that this nonpayment proceeding was commenced in 2011, that counsel for the respondent has been representing the respondent in this case since January 2012 (more than IV2 years prior to the commencement of the instant motion) and that there is no “reasonable excuse” alleged for respondent’s counsel’s delay in seeking the instant relief.
Alternatively, petitioner argues that if respondent is granted leave to interpose the proposed answer, the amended answer *708 should be limited to the three conditions that respondent mainly complained about, specifically, the ceiling leak over the toilet, the mold in the hallway and the defective bathroom vent (Bayley affirmation 1Í 5). Petitioner also argues that it is improper to amend the answer to interpose the alleged conditions/repairs because counsel for the respondent did not raise the need for repairs in every “two attorney” stipulation executed by the attorneys for the parties (Bayley affirmation 1i 5).
Additionally, if this court does grant respondent leave to serve and file the proposed amended pleading, petitioner requests an adjournment of the trial to “request a ‘DHPD’ inspection of the conditions alleged by [respondent to confirm their existence” (Bayley affirmation 1i 7).
Legal Standard
A party may amend or supplement its pleadings by leave of the court, which shall be freely given (CPLR 3025 [b]). Public policy favors resolution of cases on their merits.[1] “Courts have broad discretion to grant relief from pleading defaults where the moving party’s claim or defense is meritorious, the default was not willful, and the other party is not prejudiced”[2] and the exercise of that discretion will not be overturned absent a showing that the facts supporting the amendment do not support the purported claim or claims.[3]
Where a court concludes that an application for leave to amend a pleading clearly lacks merit, leave is properly denied.[4] A proposed amended pleading should be permitted unless it is “patently insufficient on its face.”[5] The party opposing a motion to amend a pleading must overcome a presumption of validity in the moving party’s favor, and demonstrate that the facts al *709 leged and relied upon in the moving papers are obviously unreliable or insufficient to support the amendment.[6]
Legal Analysis
First Affirmative Defense
Breach of the Warranty of Habitability
The court notes that the initial self represented answer filed alleged as a defense the breach of the warranty of habitability. Indeed, the proposed stipulation signed by petitioner’s counsel submitted to this court on the initial adjourn date of this proceeding addressed complained of conditions. Additionally, subsequent stipulations alleged the existence of numerous claimed conditions, including some listed in respondent’s proposed first affirmative defense, which petitioner agreed to “inspect and repair as necessary.” Petitioner’s argument that denial of the instant motion is warranted because not every stipulation provided for the inspection and repair of every alleged condition listed in the proposed answer is unpersuasive, as the stipulations similarly do not state that repairs are no longer an issue.
To the extent that petitioner’s position is that the omission of an allegation in every “two attorney” stipulation of the existence of conditions in need of repair failed to provide petitioner with adequate notice and an opportunity for petitioner to cure each alleged condition, that is an argument to be raised before the trial judge and not a basis to deny the requested amendment.
Additionally, the petitioner fails to submit an affidavit raising any alleged prejudice or surprise, and the affirmation from counsel for petitioner fails to demonstrate any actual surprise or prejudice. In fact,
“[t]he [c]curt notes that petitioner would be hard pressed to claim surprise as to the alleged conditions in the respondent’s apartment. [As i]n prior litigation between the parties . . . there were ‘well documented habitability claims’ as well as class ‘C’ violations . . . [Additionally, i]n the instant proceeding, the respondent’s pro se answer alleged that *710 there were conditions in need of repair.”[7]
The “court’s discretionary grant of the tenant’s motion to amend her initial, pro se answer to include a counterclaim based upon the landlord’s alleged violation of federal lead paint disclosure requirements was consistent with the general rule favoring amendments of pleadings in the absence of prejudice or surprise.”[8]
Indeed, permitting this amendment furthers the purpose for the creation of the Housing Court, 40 years ago, which was stated to be “for the establishment and maintenance of housing standards, including, but not limited to, the multiple dwelling law and the housing maintenance code, building code and health code of the administrative code of the city of New York.”[9]
Request for an Abatement
Petitioner’s argument that the portion of respondent’s proposed answer seeking an abatement should be denied as “prejudicial” and improperly sought on “the eve of trial” (Bayley affirmation 1I1Í 2, 4) is unpersuasive. The email to petitioner’s attorney dated January 7, 2013 (referred to above), which thanked petitioner’s attorney for agreeing to adjourn the “abatement hearing” scheduled for January 8, 2013, put the petitioner on notice that the respondent was seeking an abatement of rent. There is nothing in the court file to indicate that the petitioner objected to the Legal Aid Society’s position that the matter was scheduled for an abatement hearing on that date. Additionally, the transfer order dated April 15, 2013 (four months after the email noting an abatement hearing was contemplated), states that “respondent] wants an abatement pet[ition]er does not offer anything.” Notably, the Judge that signed the transfer order (Gary Marton, J.) did not mark on the transfer order that petitioner offers nothing because of a lack of notice, as this defense was not raised in respondent’s answer.
Additionally, on the return date of the instant motion, the case was not ready to proceed to trial; thus, petitioner’s “eve of trial” argument is unavailing.
*711 Second Affirmative Defense
Constructive Eviction
The respondent’s proposed second affirmative defense seeks to amend the answer to include a defense of constructive eviction, due to damage as a “result of Hurricane Sandy” (see proposed pleading 1i 5; see also Ramos off 1Í 3). In support of his position, respondent states that this defense is proper for an amended pleading, as Hurricane Sandy had not occurred prior to the filing of his initial answer (Ramos off H 3).
Where a landlord commences a nonpayment summary proceeding, seeking unpaid rent, a respondent may assert “constructive eviction” as a defense.[10] To establish a constructive eviction defense, the tenant must establish that “the landlord’s wrongful acts substantially and materially deprive[d] the tenant of the beneficial use and enjoyment of the premises” and that the tenant actually abandoned possession of all or part of the property.[11]
Hurricanes, as well as other “heavy weather occurrences,” have invoked “Act of God”[12] defenses[13] by those seeking to avoid liability caused by such an occurrence.[14] The phrase “act of nature”[15] refers to a “natural occurrence over which humans have no control and were not involved in creating the occurrence.” *712 [16] Since “[a]¡most any inclemency of weather causing property damage is an ‘act of God,’ ”[17] the phrase has been limited to “a disturbance of such unanticipated force and severity as would fairly preclude charging a party with responsibility occasioned by that party’s failure to guard against it in the protection of property committed to its custody.”[18]
While it has been held that the “common-law doctrine of Act of God” is, “clearly, preempted by the statutorily imposed obligations” mandating warranty of habitability in every residential lease,[19] this court holds that damage alleged to have been caused by such an “act of nature,” to wit, Hurricane Sandy, cannot support a defense of constructive eviction, as a crucial element of the defense (a wrongful act by the petitioner) is lacking.[20]
Additionally, there is no allegation that the respondent, his adult son and his young daughter actually abandoned possession of all or part of the apartment.[21] As claims of partial actual or constructive eviction are not viable where tenant remained in full possession of leased premises,[22] respondent has not met his burden to assert this defense.[23]
Conclusion
For the foregoing reasons, that portion of respondent’s motion seeking leave to serve and file the proposed amended answer is granted solely to the following extent:
*713 Respondent is granted leave to serve the proposed amended answer containing a “general denial” as that defense was asserted in respondent’s initial self represented answer;
Respondent is granted leave to serve the proposed amended answer containing the first affirmative defense of a breach of the warranty of habitability and request for an abatement of rent;
Respondent is denied leave to amend his pleading to interpose the second affirmative defense of constructive eviction;
Respondent is granted leave to interpose his counterclaim that he is entitled to an order directing the petitioner to correct such conditions which constitute a violation of the Housing Maintenance Code;
Respondent’s proposed pleading is deemed served, in compliance with the instant decision/order;
Petitioner preserves its right to defend against any abatement for conditions or claims listed in the proposed amended pleading for the period in which petitioner was not notified of such conditions, or where access was an issue; and
Petitioner’s informal application seeking to adjourn this matter for a DHPD inspection is denied as moot, as on the date this motion was submitted, this court ordered a DHPD inspection.
The matter is restored to the Part A calendar on October 8, 2013, at 9:30 a.m. for all purposes including transfer to the Expediter for trial and an abatement hearing.

. Goldman v City of New York, 287 AD2d 482 (2d Dept 2001).

. Goldman v City of New York at 483; Smith v Maya, 1999 WL 1037917 (App Div, 2d Dept, July 23, 1999, No. 98-770-KC); Valdes v Marbrose Realty, 289 AD2d 28, 29 (1st Dept 2001).

. Sewkarran v DeBellis, 11 AD3d 445 (2d Dept 2004); Non-Linear Trading Co. v Braddis Assoc., 243 AD2d 107 (1st Dept 1998).

. Davis & Davis v Morson, 286 AD2d 584 (1st Dept 2001); Peach Parking Corp. v 346 W. 40th St., LLC, 42 AD3d 82 (1st Dept 2007).

. Hospital for Joint Diseases Orthopaedic Inst. v Katsikis Envtl. Contrs., 173 AD2d 210, 210 (1st Dept 1991).

. Daniels v Empire-Orr, Inc., 151 AD2d 370 (1st Dept 1989); Peach Parking Corp. v 346 W. 40th St, LLC, 42 AD3d 82 (1st Dept 2007).

. 601 W. Realty, LLC v Chapa, 19 Misc 3d 1133(A), 2008 NY Slip Op 50985(U), *2 (Civ Ct, NY County 2008) (emphasis omitted).

. Graham Ct. Owners Corp. v Powell, 9 Misc 3d 94, 95 (App Term, 1st Dept 2005) (citations omitted).

. NY City Civ Ct Act § 110 (a); Bastien v Spence, 35 Misc 3d 1236(A), 2012 NY Slip Op 51021(U) (Civ Ct, Kings County 2012); Scherer, Residential Landlord-Tenant Law in New York § 7:47 (2011).

. Minjak Co. v Randolph, 140 AD2d 245 (1st Dept 1988).

. Barash v Pennsylvania Term. Real Estate Corp., 26 NY2d 77, 83 (1970); 74 NY Jur 2d, Landlord and Tenant § 294.

. A recent court held that the term “ ‘act of nature’ is the politically correct modern equivalent of the common law [phrase] ‘act of God’ ” (Pietrangelo v S & E Customize it Auto Corp., 39 Misc 3d 1239[A], 2013 NY Slip Op 50933[U], **4 [Civ Ct, Richmond County 2013]), and, except where citing direct authority, this court will hereafter utilize the updated language.

. Green Is. Contr. Corp. v State of New York, 53 AD2d 712, 714 (3d Dept 1976) (“costs of cleaning up damage resulting from heavy rainstorms . . . [are] acts of nature, and the Court of Claims properly disallowed recovery on this portion of the claim”); Abarca v Clarks Shoes, 81 AD3d 675, 676 (2d Dept 2011) (“the storm was an act of God, and that the resulting damage . . . could not have been prevented by human care, skill, and foresight”); Pietrangelo v S & E Customize it Auto Corp., 39 Misc 3d 1239(A), 2013 NY Slip Op 50933(U), *7 (Civ Ct, Richmond County 2013) (“Hurricane/Superstorm Sandy qualifies as an ‘act of nature’ ”).

. Gibbs v Hawaiian Eugenia Corp., 966 F2d 101, 104 (2d Cir 1992) (lower court erred in disallowing the claim “that nonarrival [of shipment] was due to a force majeure without the fault of the . . . owner”).

. Results of this court’s research relative to the issue of damages caused as a result of “acts of nature” were dominated by cases involving maritime law and insurance related issues.

. Pietrangelo v S & E Customize it Auto Corp., 39 Misc 3d 1239(A), 2013 NY Slip Op 50933(U), *4 (Civ Ct, Richmond County 2013).

. Compania De Vapores Insco, S.A. v Missouri Pac. R.R. Co., 232 F2d 657, 660 (5th Cir 1956).

. James E. Mercante, Superstorm Sandy Resurfaces in Court, NYLJ, Sept. 10, 2013 at 3, col 1, citing James E. Mercante, Hurricanes and Act of God: When the Best Defense is a Good Offense, 18 USF Mar LJ 1, 38-39 (2005-2006).

. Spatz v Axelrod Mgt. Co., 165 Misc 2d 759, 765 (Yonkers City Ct 1995), citing Real Property Law § 235-b.

. This is consistent with case law and statutes, as the elements to establish claims for breach of the warranty of habitability, and entitlement to a rent abatement, differ from those to establish a claim for constructive eviction (see e.g. Scherer, Residential Landlord-Tenant Law in New York § 12:72 et seq. [2012-2013]).

. 127 Rest. Corp. v Rose Realty Group, LLC, 19 AD3d 172 (1st Dept 2005).

. Minjak Co. v Randolph, 140 AD2d 245 (1st Dept 1988).

. 317 W. 89th St, LLC v Engstrom, 36 Misc 3d 1242(A), 2012 NY Slip Op 51803(U) (Sup Ct, NY County 2012); Jacobs v 200 E. 36th Owners Corp., 281 AD2d 281 (1st Dept 2001), citing Dave Herstein Co. v Columbia Pictures Corp., 4 NY2d 117 (1958).