Tully & Di Napoli, Inc., et al., Respondents-Appellants, v. State of New York, Appellant-Respondent. (Claim No. 44022.)

Third Department, July 8, 1970.

*Louis J. Lefkowitz*, Attorney-General (*Ruth V. Iles* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

*Joseph B. Diamond* (*William J. Jones* of counsel), for respondents-appellants.

*Healy & Baillie* (*Thomas L. Rohrer* of counsel), for Construction Aggregates Corp. (not a party to the action).

STALEY, JR., J. These are cross appeals from a judgment in favor of claimants, entered January 20, 1969 upon a decision of the Court of Claims.

On December 1, 1958 claimants entered into a contract with the State for the construction of a portion of the Cross-Bronx Expressway and a portion of Throgs Neck Expressway. The work to be performed consisted of preliminary grading and drainage, water main and sewer installations, construction of concrete abutments and retaining walls, and other miscellaneous items. The contract was a unit price contract, and provided that the unit price bid for each item should include the cost of furnishing of labor, equipment, and material for the work. The completion date was December 1, 1959. Claimants commenced work on December 12, 1958 and, thereafter, delays occurred, and several extensions of time to complete the work were requested by claimants and granted by the State. The contract was completed on December 16, 1960 and accepted by the State on February 9, 1961.

The State appeals from that part of the judgment which awarded claimants $58,700.88 as damages for delay, and $260,-

865.15 for fill allegedly furnished by claimants' subcontractor for which they contend they were not paid. Claimants appeal from that part of the judgment which awarded damages for delay as insufficient, in that the trial court disallowed the item of " additional main office expense " of $85,276, and also from that part of the judgment which denied recovery for additional drainage work of $9,274.98; for additional costs involved because of the change in plans for construction of the tide gate chamber of $7,035.70; for additional expense for delay and idle equipment of the subcontractor for pile driving of $1,202.71; and for payment for 4,508 cubic yards of fill on roadways short of the payment limit lines of $9,286.48.

Claimants' cause of action for delays encountered in the performance of the contract is based on their contentions that the delays resulted from the State's failure to demolish certain buildings within the right of way, and to remove boats on one area of the contract site which interfered with claimants' progress; from the State's failure to provide access to Pennyfield and Lawton Avenues within the construction limits due to sit-down strikes by abutting owners; from the State's failure to obtain easements for encroachment on private property to complete embankments and install utilities; from the failure of muck disposed of in disposal areas to shrink in accordance with information set forth in the contract drawings; and by reason of the fact that claimants were required to perform extra work not included in the contract plans and specifications.

The trial court found that claimants were delayed in the performance of the work from December 1, 1959 through August 7, 1960 and awarded damages for the full period of the delay. In making its award the court did not allocate the total period of delay among the various factors which it found to have caused delay, and the record is not adequate to permit us to make such an allocation or to determine to what extent, if any, there was duplication or overlapping in the various periods of delay. Since it does not appear from the record that the State is liable for all the delay, so much of the judgment as awards damages for delay in the amount of $58,700.88 must be reversed and remanded for a new trial. (See *Bero Constr. Corp.* v. *State of New York*, 27 A D 2d 974.) With respect to the delay allegedly caused by the presence of buildings within the right of way and pleasure boats in winter storage in the area where claimants were to dispose of muck excavation and build a dike, the trial court did not have the benefit of our recent decision in *Peckham Road Co.* v. *State of New York* (32 A D 2d 139), decided subsequent to the Court of Claims decision in the case at bar, on the effect of excul-

patory clauses, and should reconsider its decision in the light of that case.

The trial court disallowed the claim for additional main office expense allegedly incurred by reason of the delays, and claimants appeal from that determination. Claimants, as joint venturers, entered into an agreement with each other to the effect that Tully and Di Napoli would receive 2% of the gross income from the contract for main office expenses, and the trial court held that such allowance was for the entire contract period whether extended by delay or some other reason. This arrangement was entered into between the joint venturers, and the State was not a party to it. The evidence presented to prove the alleged damages for additional main office expense by reason of the delays was not only speculative, but also devoid of any reasonable basis for computation of such damages. This part of the claim was properly denied by the trial court.

The State further contends that it was error to award damages for additional hydraulic fill furnished by claimants' subcontractor, over and above the amount computed by the State's engineer by reason of the provisions of the Public Works specifications which provide that all measurements of materials in place as determined by the engineer " shall be accepted as final, conclusive and binding on the contractor."

The trial court found that contract Item 2US, Muck Excavation, provided that all unsuitable materials (silt) should be excavated and completely removed down to the underlying firm sand strata. However, within three weeks after the excavation work started, it was discovered that the amounts of material being removed were far in excess of the amounts expected based on test borings. The State thereupon changed its requirement for excavation work and made recommendations for the excavation of remaining unsuitable materials which contained this directive: " Do not excavate any gray organic silt having a natural moisture content less than 60%, as this material will stabilize rapidly under the weight of the fill, and will furnish an adequate foundation."

Claimants contend that as a result of this change, all unsuitable material was not removed down to the underlying firm sand strata and, therefore, when fill was placed on silt having a moisture content of 60% or less, the weight of the fill squeezed water out by percolation, and the remaining materials were condensed, occupied less volume and greater amounts of fill were thus required. The bottom payment line for the computation of the amount of fill supplied was to be the bottom of the excavation. The State determined the bottom payment line from a survey

made before any fill was placed, and determined the quantities of fill from final cross sections, using the bottom payment line as measured in the prior survey. Claimants contend that the State's measurements were inaccurate because the bottom payment line had subsided after fill was placed thereon, and the State's method did not take this into account.

The State relies on the provision that no payment would be made for any losses of material resulting from " shrinkage, compaction, compression, foundation settlement, waste, flow, erosion, leakage or any other causes." Claimants contend that the subsidence of the bottom of the excavation, which represented the bottom payment line, did not fall within the provision with respect to loss of material as this was not a foundation settlement within the meaning of such term as set forth in the plans and specifications, and that, in any event, the change in specifications as to the excavation of all unsuitable material down to the underlying firm sand strata invalidated the contract provisions with respect to measurement and payment.

Claimants introduced evidence to show how much fill it actually placed within the payment lines, which evidence carefully explained the process in which fill was delivered to the site and the method by which this amount was converted into fill measurement in place. The State should not be permitted to rely on the provisions that the State's engineer's computation should be final and that no payments would be made for loss of material resulting from shrinkage in view of the changes directed by the State in the manner in which the excavation work should be performed. Despite exculpatory clauses in a contract, the State may be held liable for damages caused by its active interference, misrepresentations, fraud or bad faith. (*Jackson* v. *State of New York,* 210 App. Div. 115, affd. 241 N. Y. 563; *Cauldwell-Wingate Co.* v. *State of New York,* 276 N. Y. 365; *Johnson, Drake & Piper* v. *State of New York,* 29 A D 2d 793, 794.) The State should pay for the additional fill necessitated by the fact that all unsuitable material was not excavated.

Claimants also appeal from the disallowance of their claims for additional drainage work, additional cost for construction of a tide gate chamber, additional expense for delay in performance of certain pile driving work and for payment for fill not supplied within the permissive tolerance level, but below the payment limit line. In relation to the claim for additional drainage work, the fact that deeper trenches were required appears to be merely a quantitative change, and under the circumstances, does not entitle claimants to additional damages. (*Depot Constr. Corp.* v. *State of New York,* 23 A D 2d 707, affd. 19 N Y 2d 109.)

In relation to the construction of the tide gate chamber, such work did not alter the original contract requirements for constructing overflow and collecting chambers, and the claim for additional damages was properly dismissed. In relation to the claim for delays to claimants' subcontractor for pile driving, the trial court found that such delays were not unreasonable and not compensable, and such determination should be affirmed. In relation to the claim for payment of fill in streets to the payment line which amount of fill fell short of the payment line but within the tolerance level of three tenths of a foot, the finding that where such shortages were involved, claimants were entitled to payment only for material actually placed should be upheld.

The judgment should be modified, on the law and the facts, so as to vacate the award of $58,700.88 and interest as damages for delay, and a new trial ordered as to the cause of action set forth in the paragraph numbered " 7N " in the claim; and, as so modified, affirmed, without costs.

HERLIHY, P. J., REYNOLDS, GREENBLOTT and COOKE, JJ., concur.

Judgment modified, on the law and the facts, so as to vacate the award of $58,700.88 and interest, as damages for delay, and a new trial ordered as to the cause of action set forth in the paragraph numbered " 7N " in the claim; and, as so modified, affirmed, without costs. Settle order.