VAN GRAAFEILAND, Circuit Judge:
 

 HBE Corporation, a general contractor, and its surety, The Fireman’s Fund Insurance Company, appeal from a judgment in favor of one of HBE’s subcontractors, Port Chester Electrical Construction Corporation, which followed a bench trial in the United States District Court for the Southern District of New York (Gershon, Mag. J.). This is the second time this case has been before us. On the first appeal, 894 F.2d 47, we reversed the grant of summary judgment in favor of the defendants on the ground that a clause in the subcontract, interpreted by the district court as a broad “no damages for delay” provision, in fact precluded recovery by Port Chester only for such increased costs as resulted from changes in work schedules. The trial following remand resulted in a verdict. of $831,776.55, which, when coupled with prejudgment interest, totals $1,226,586.30. For the reasons that follow, we again reverse and remand.
 

 On July 16, 1981, HBE entered into a contract with Nyack Hospital to act as the design/build contractor for renovations and new construction at the Hospital. In the fall of 1982, HBE entered into a subcontract with Port Chester for the latter to do the electrical work on Phase II of the project, which encompassed the addition of a top floor to a new . hospital wing already under construction and the renovation of an existing building. The anticipated corn-pletion date for this work was late 1984. It was not completed, however, until June 1986.
 

 In 1984, Port Chester and HBE agreed that Port Chester was entitled to be paid $35,000 because of compensable delays that had occurred prior to January 1 of that year. The award below was for delays that allegedly occurred after that date. Although the district court found, and the parties do not dispute, that many of these delays were caused by the ongoing operation of the Hospital during its remodelling, the improper and laggardly work of other subcontractors, the unexpected discovery of asbestos, and even by inclement weather,
 
 see, e.g.,
 
 782 F.Supp. 837, 840-41 (S.D.N.Y.1991), the court below held HBE responsible for every one of the delays.
 
 Id.
 
 at 846. In so doing, the court clearly erred.
 

 Port Chester acknowledged at the outset that it was working in an existing hospital facility and that electrical work would have to be done at the convenience of the Hospital. Having agreed to work under such conditions, Port Chester could not expect to hold HBE responsible for the inevitable delays that resulted.
 
 See Phoenix Contracting Corp. v. New York City Health and Hospitals Corp.,
 
 118 A.D.2d 477, 478-79, 499 N.Y.S.2d 953 (1st Dep’t 1986) (mem.).
 

 Port Chester’s subcontract also provided:
 

 Contractor [HBE] may, ■ from time to time, modify or alter the work schedule, but, in such an event, no such modification or alteration shall entitle Subcontractor to any increase in the consideration of the Subcontract.
 

 Port Chester’s brief (pp. 15-16) complains of five such schedule revisions. We do not understand the district court’s comment that Port Chester “does not seek recovery for mere changes in work schedule, but for massive delays, which it has proved and for which HBE is responsible.” 782 F.Supp. at 841. The above-quoted contractual provision does not preclude recovery for a schedule change
 
 qua
 
 a schedule change.
 
 *822
 
 It precludes “any increase in the consideration of the Subcontract” as a result of a schedule change. To the extent that Port Chester’s claim for increased remuneration is based upon a modification or alteration of the work schedule, recovery is precluded by the terms of its contract.
 
 See
 
 894 F.2d at 48.
 

 To the extent that Port Chester seeks to hold HBE wholly responsible for delays caused by the Hospital, by other prime contractors or subcontractors, by the discovery of asbestos, or by the weather, its claim runs counter to controlling New York law. The New York Court of Appeals’ holding in
 
 Triangle Sheet Metal Works, Inc. v. James H. Merritt and Co.,
 
 79 N.Y.2d 801, 580 N.Y.S.2d 171, 588 N.E.2d 69 (1991) (mem.), is squarely in point. Triangle, a subcontractor of Merritt. on a construction project for the City of New York, sought recovery for performance delays, which were contributed to by acts and omissions of the City, its engineer, and other contractors, and also by inclement weather. Triangle’s counsel informed the trial court before resting its case that Triangle was unable to make an accurate allocation of damage resulting from delays caused solely by matters within Merritt’s control. Counsel argued that, irrespective of the causes of the delay, the total damage which was a consequence of the delay was attributable to Merritt. This is precisely what the district court held in the instant case.
 

 In.affirming the trial court’s dismissal of the complaint at the close of Triangle’s case, the New York Court of Appeals said:
 

 This case falls squarely within the general rule that, absent a contractual commitment to the contrary, a prime contractor is not responsible for' delays that its subcontractor may incur unless those delays are caused by some agency or circumstance under the prime contractor’s direction or control.
 

 Id.
 
 at 802, 580 N.Y.S.2d 171, 588 N.E.2d 69 (citations omitted). The
 
 Triangle
 
 court concluded:
 

 If a subcontractor wants a prime contractor to be a guarantor of job performance, it should bargain for the inclusion in its subcontract of a provision to that effect.
 

 Id.
 
 at 803, 580 N.Y.S.2d 171, 588 N.E.2d 69 (citations omitted).
 

 There was no such guaranty in the instant case. Indeed, the entire tenor of Port Chester’s subcontract was to the contrary;
 
 e.g.,
 
 “Subcontractor is responsible for coordinating his work with all other subcontractors and is responsible for meeting the schedule of work as required by Contract.” Moreover, HBE’s contract with the Hospital provided that in HBE’s capacity as job architect it would not be responsible for the acts or omissions of any subcontractors or any other persons performing any of the work.
 

 On remand, the district court should determine which, if any, of the alleged delays were attributable in whole or in part to HBE, and limit Port Chester’s recovery accordingly.
 
 See Tully & DiNapoli v. State of New York,
 
 34 A.D.2d 439, 441, 311 N.Y.S.2d 941 (3d Dep’t 1970);
 
 Bero Constr. Corp. v. State of New York,
 
 27 A.D.2d 974, 278 N.Y.S.2d 658 (4th Dep’t 1967) (mem.).
 

 The district court also should find, either that Port Chester gave HBE proper written notice of claim with respect to the delays for which HBE could be faulted, or that there was a legally sufficient reason for its failure to do so. HBE’s contract with the Hospital provided that all of HBE’s subcontracts shall:
 

 require that all claims for additional costs, extensions of time, damages for delays or otherwise with respect to subcontracted portions of the Work shall be submitted to HBE ... in sufficient time so that HBE may comply in the manner provided in the Contract for like claim by HBE upon the Owner.
 

 The January 19, 1984 letter of Port Chester’s manager, quoted in the district court’s opinion, 782 F.Supp. at 842, did not comply with this requirement, since it referred only to the probability of future delays resulting from a changed schedule. The district court erred in holding that it did comply.
 
 Id.
 
 We also find error in the district court’s blanket acceptance of all the handwritten “Speed Memos” as constitut
 
 *823
 
 ing compliance in full with the notice of claim requirement.
 
 Id.
 
 at 842-43.
 

 The clear intent of the prime contract, whose terms, as we already have held, are incorporated by reference into Port Chester’s subcontract,
 
 see
 
 894 F.2d at 49, is that Port Chester’s claims for extra remuneration attributable to delay should be submitted promptly to HBE so that HBE in turn could give the architect and owner appropriate written notice.
 

 If HBE wishes to make a claim for an increase in the Contract Sum, it shall give the Architect and the Owner written notice thereof within thirty days after the occurrence of the event giving rise to such claim____ No such claim shall be valid unless so made.
 

 The district court clearly erred when it stated that “HBE not only had notice of the delays but notice that the delays would result in claims for delay damages.” 782 F.Supp. at 843. None of the Speed Memos that we have examined contains an express demand for additional compensation; in some of the memos such a demand cannot even be implied, despite the district court’s apparent belief to the contrary. For example, Port Chester reasonably could not have expected HBE to compensate it for delays caused when another prime contractor hired by the Hospital dug up the kitchen floor and installed new plumbing. Furthermore, statements in a number of Speed Memos, to the effect that the work holdup identified therein might result in a delay to HBE’s schedule, read more like exculpatory statements than assertions of claim.
 

 It may be, however, that in some instances a proper and timely notice of claim was given or waived, or there might have been some lawful compelling reason why it was not given. Because we do not know for which delays the district court will hold HBE responsible, we leave it to that court to decide in the first instance the adequacy of the pertinent notices of claim.
 

 We reject Port Chester’s contention that, regardless of disputes concerning notices of claim and allocations of liability, HBE is liable for all of Port Chester’s losses because of a July 25, 1985 agreement between the Hospital and HBE covering charges made by HBE on the Hospital’s project prior to that date. The agreement contains, among other things, the following provision:
 

 Further, HBE Corp. and Nyack Hospital mutually agree there will be no pursuit of delay claims which include any claims from subcontractors of HBE.
 

 Port Chester contends that, pursuant to this clause, HBE obligated itself to pay all of Port Chester’s delay claims despite the fact that HBE might not otherwise be liable for them. The clause cannot reasonably be so interpreted. HBE simply agreed not to pursue against the Hospital any claims made against HBE by its subcontractors. It did not agree to pay all claims made against it by the subcontractors.
 

 The judgment of the district court is reversed and the matter is remanded to the district court for further proceedings consistent with this opinion.